Marietta B. MINELLI, Petitioner

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 14, 2011.

Decided Feb. 9, 2012.

Marietta B. Minelli, pro se.

Jonathan D. Koltash, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge [1], and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge.

1. This case was assigned to the writer before Judge Pellegrini succeeded Judge Leadbetter as President Judge.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S.

OPINION BY Judge COHN JUBELIRER.

Marietta B. Minelli (Claimant), pro se, petitions for review of an Order of the Unemployment Compensation Board of Review (Board) affirming the Decision and Order of the Unemployment Compensation Referee (Referee) denying Claimant unemployment compensation (UC) benefits pursuant to Section 402(h) of the Unemployment Compensation Law (Law).[2] We reverse.

Claimant was last employed by DK Harris Consulting (DK Harris) as a consultant pursuant to an independent contractor agreement. (Referee's Decision/Order, Findings of Fact (FOF) ¶ 1, 9.) Claimant worked a total of 22 hours for DK Harris beginning August 12, 2010 and ending August 14, 2010. (FOF at ¶ 1–2.) Claimant applied for UC benefits for the compensable week ending August 21, 2010. (Notice of Determination at 1, R. Item 4.) The Altoona UC Service Center (Service Center) determined that Claimant was not ineligible for benefits pursuant to Section 402(h) of the Law because Claimant was not free from direction or control in the performance of her consulting job. (Notice of Determination at 1, R. Item 4.)

DK Harris timely appealed and the Referee held a hearing at which both Claimant and Denise Harris, DK Harris's principal, testified. The Referee found that: (1) "Claimant was part of a team reviewing clinical records of hospice patients" for one of DK Harris's clients, (FOF ¶ 3); (2) "Claimant retrieved data from files that the client chose randomly," (FOF ¶ 4); (3) "Claimant observed interviews with pa-

§ 802(h). Section 402(h) provides that "[a]n employe shall be ineligible for compensation for any week ... (h) [i]n which [she] is engaged in self-employment." *Id.*

tients," (FOF ¶ 5); (4) "Claimant's evaluation and analysis [were] entered into [ ] DK Harris's report to the client," (FOF ¶ 6); (5) "Claimant used her own equipment (computer) to compile her report," (FOF ¶ 7); (6) "[DK Harris] did not supervise [C]laimant's performance of her duties," (FOF ¶ 8); (7) "Claimant signed an independent contractor agreement," (FOF ¶ 9); (8) "Claimant submitted an invoice via email for her services," (FOF ¶ 10); and (9) Claimant "is free to perform services for other parties," (FOF ¶ 11). Based on these findings, the Referee concluded that "[C]laimant was free from direction and control and was engaged in an independent profession." (Referee's Decision/Order at 2.) Accordingly, the Referee reversed the Service Center's determination and denied Claimant benefits beginning with the week ending August 21, 2010. (Referee's Decision/Order at 2.)

■ Claimant timely appealed to the Board. Upon review, the Board adopted the Referee's findings of fact and conclusions of law. (Board Decision/Order.) The Board pointed out that Claimant admitted that she worked as an independent contractor.[3] (Board Decision/Order.) Accordingly, the Board affirmed the Referee's Decision and Order. Claimant now petitions this Court for review.[4]

■ Before this Court, Claimant argues that her activities do not meet the two-pronged test for determining whether the services performed are "employment" as required by the Law. Claimant contends that her three-day consulting arrangement did not make her a self-employed individual, such that she should no longer be eligible for benefits, because such an arrangement does not meet any reasonable definition of self-employment. Claimant argues further that she has never been customarily engaged in an independently established trade or business.

■ Pursuant to Section 402(h), a claimant is ineligible for unemployment benefits in any week "[i]n which [she] is engaged in self-employment." 43 P.S. § 802(h). Section 402(h) does not define the term "self-employment"; however, Section 4(*l*)(2)(B) of the Law defines "employment", in pertinent part, as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under [her] contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). The purpose of Section 4(*l*)(2)(B) "is to exclude independent contractors from coverage." *Beacon Flag Car Co., Inc. (Doris Weyant) v. Un-*

<hr>

3. The Board rejected, as meritless, Claimant's contention that she was misled by the Service Center into believing she could perform consulting services as an independent contractor without affecting her UC benefits. (Board Decision/Order.)

4. This Court's review is limited to determining whether the Board's adjudication is in violation of constitutional rights, whether an error of law was committed, or whether the factual findings are supported by substantial evidence. *Nolan v. Unemployment Compensation Board of Review,* 797 A.2d 1042, 1045 n. 4 (Pa.Cmwlth.2002). Substantial evidence is such evidence which "a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." *Centennial School District v. Department of Education,* 94 Pa.Cmwlth. 530, 503 A.2d 1090, 1093 n. 1 (1986).

*employment Compensation Board of Review*, 910 A.2d 103, 107 (Pa.Cmwlth.2006). "This provision presumes that an individual is an employee." *Id.* However, "this presumption may be overcome if the putative employer sustains its burden of showing that the claimant was free from control and direction in the performance of [her] service and that, as to such service, was customarily engaged in an independent trade or business." *Id.* "Unless both of these showings are made, the presumption stands that one who performs services for wages is an employee." *Id.* Recently, this Court explained that:

> persons are independent contractors if they are not subject to the control of the company; are not a unit or other component of the company; are not connected in a subordinate manner to the company; do not depend on the company for their existence, operation or efficiency; would not be out of employment if the company were to cease conducting business; are free to perform their services for any other company; and are not compelled to look to the company for the continuation of their ability to provide services. [*Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 586 Pa. 196, 218–19, 892 A.2d 781, 795 (2006) ].

Ultimately, our Supreme Court approved this court's consideration of three factors: (1) whether the individuals are able to work for more than one entity; (2) whether the individuals depended on the existence of the presumed employer for ongoing work; and (3) whether the individuals were hired on a job-to-job basis and could refuse any assignment. *Id.* at 222–23, 892 A.2d at 797–98; *see Osborne Associates, Inc. v. Unemployment Compensation Board of Review*, 3 A.3d 722, 728 (Pa.Cmwlth. 2010).

*Gill v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 26 A.3d 567, 570 (Pa. Cmwlth.2011).

The Board, in the present case, found that "Claimant signed an independent contractor agreement" and was "free to work for others." (FOF ¶ 9, 11.) These findings are supported by the testimony of both Ms. Harris and Claimant. (Referee's Hr'g Tr. at 5–9.) Ms. Harris's witness testified that: (1) Claimant was hired as an independent contractor to perform a management evaluation of a hospice program; (2) Claimant was an RN and that one of Claimant's areas of expertise was reviewing clinical records; (3) Claimant was part of a team with other independent contractors; (4) Claimant had oversight and performed the evaluation of the hospice records; (5) Claimant had no supervision in terms of how she performed the evaluation; (6) Claimant entered the data on her own computer; (7) the independent contractor agreement was still in effect in case DK Harris needed Claimant to perform another evaluation; (8) DK Harris was reimbursed for all of Claimant's expenses by the client; and (9) the contract was not an employment agreement in that Claimant would be terminated; rather, DK Harris would just not utilize Claimant. (Referee's Hr'g Tr. at 5–9.)

In addition, the independent contractor agreement that Claimant entered into with DK Harris specifically provides that Claimant was "free to perform services for other parties while performing services for" DK Harris. (Independent Contractor Agreement at ¶ 8, R. Item 5.) The independent contractor agreement further provides that the agreement "shall not render [Claimant] an employee ... with [DK Harris] for any purpose" and that [Claimant] "shall have no claim against [DK Harris]

... for ... unemployment insurance benefits." (Independent Contractor Agreement at ¶ 12, R. Item 5.)

Claimant testified that she entered into a contract with DK Harris as an independent contractor. (Referee's Hr'g Tr. at 5, 9.) Claimant testified further that she discussed her qualifications with Ms. Harris prior to entering into the independent contractor agreement, that she knew the work was limited and on an "as needed" basis, and that she completed the tasks based on her prior experience. (Referee's Hr'g Tr. at 9.)

The foregoing evidence supports the Board's conclusion that Claimant was free from control and direction in the performance of the contracted services for DK Harris. Thus, the first element of Section 4(*l*)(2)(B) is satisfied.

■ We now turn to Claimant's contention that she was not, and never has been, customarily engaged in an independently established trade or business; therefore, her activities do not meet the second element of Section 4(*l*)(2)(B) of the Law. Based on this Court's recent decision in *Silver v. Unemployment Compensation Board of Review,* 34 A.3d 893 (Pa.Cmwlth. 2011), we agree with Claimant that the second element of Section 4(*l*)(2)(B) has not been established in this matter.

In *Silver,* the claimant, who was receiving unemployment compensation benefits, began performing consulting work as a non-agent independent contractor, on an "as needed" basis, for Gerson Lehrman Group, Inc. (Gerson). *Silver,* 34 A.3d at 894–95. After reporting her earnings to the unemployment compensation authorities, the local service center issued a determination informing Claimant that she was ineligible for benefits pursuant to Section

402(h) of the Law for the period September 19, 2009 through October 24, 2009. *Id.* at 894–95. During the foregoing time period, the claimant "participated in a total of three hours of work for Gerson's clients." *Id.* at 896 n. 7. The claimant appealed, stating that because she had accepted isolated, sporadic assignments and did not expect additional assignments were forthcoming, she was not customarily engaged in a business or occupation within the meaning of the Law. *Id.* at 894–95. Following a hearing, the Referee held that the claimant was ineligible for unemployment compensation benefits. *Id.* at 895. After remanding the matter for an additional hearing, the Board concluded that " 'Gerson ... has demonstrated that [Claimant] is free from its direction and control and has demonstrated that the business is one which is customarily engaged in as an independent trade or business.' " *Id.* at 895 (quoting Board Decision at 4). Accordingly, as to the first element of Section 4(*l*)(2)(B), the Board determined that the claimant was ineligible for benefits pursuant to Section 402(h) of the Law and, on appeal to this Court, we agreed that the facts were "sufficient to support the Board's conclusion that Claimant was free from Gerson's direction and control, satisfying the first element of Section 4(*l*)(2)(B)." *Id.* at 897. However, with respect to the second element of Section 4(*l*)(2)(B), we agreed with the claimant "that her activities with Gerson," consisting of three hours of work in five months' time, were "de minimis and insufficient to demonstrate that she [was] customarily engaged in an independently established trade, occupation, profession or business." *Id.* at 897. Relying on this Court's prior decisions in *Buchanan v. Unemployment Compensation Board of Review,* 135 Pa. Cmwlth. 567, 581 A.2d 1005 (1990)[5] and

5. In *Buchanan,* 581 A.2d at 1009, this Court    held that "the act of setting up a booth at a

*Teets v. Unemployment Compensation Board of Review,* 150 Pa.Cmwlth. 419, 615 A.2d 987 (1992),[6] we specifically held that "the fact that an unemployed person agrees to accept, and thereafter does accept, an occasional offer of work is simply not enough to demonstrate that said individual is customarily engaged in an independently established trade, occupation, profession or business." *Id.* at 898.

In the present case, the supported facts show that Claimant performed work on an "as needed" basis for DK Harris and ultimately performed only a total of twenty-two hours of work over a three-day time period beginning August 12, 2010 and ending August 14, 2010.[7] (Referee's Hr'g Tr. at 5–9; FOF ¶¶ 1–2.) As in *Silver,* this occasional offer of a limited amount of work over such a short time period "is simply not enough to demonstrate that [Claimant] is customarily engaged in an independently established trade, occupation, profession or business." *Silver,* 34 A.3d at 898. Therefore, the second element of Section 4($l$)(2)(B) has not been established in this matter.

We point out, however, that this Court, in holding that the second element of Section 4($l$)(2)(B) has not been met under the facts of this case, is in no way departing from the three part test described by our Supreme Court in *Viktor,* 586 Pa. at 222–23, 892 A.2d at 797–98, to determine whether one is engaged in an "independently established trade, occupation, profession or business." Rather, we are simply recognizing that the Law requires an additional element, that the claimant be *customarily* engaged in such trade or business in order to be considered self-employed. This element was not discussed in *Viktor,* or other cases which followed, because the persons found to be independent contractors in those cases were clearly engaged in ongoing business activities rather than an isolated or sporadic job(s).

Accordingly, the Board's Order is reversed.[8]

## ORDER

**NOW,** February 9, 2012, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby **REVERSED.**

weekly flea market," in order to sell homemade jewelry did not constitute "customary engagement in an independently established trade, occupation, profession or business under Section 4($l$)(2)(B) of the Law."

6. In *Teets,* 615 A.2d at 989–90, this Court, relying on *Buchanan,* held that the claimant's activities of selling skin care products pursuant to a distributor agreement, wherein she earned less than $6.00 in income from such activities, did not constitute self-employment. We held that "the fact that an activity which may generate a limited amount of income is not undertaken while a claimant is still employed does not automatically make it 'self-employment.'" *Id.* at 989.

7. Like the claimant in Silver, Claimant was eligible for and actually receiving benefits as the result of the loss of prior employment before she took the three day job with DK Harris. Thus, the question presented here is not whether the work for DK Harris itself would entitle Claimant to benefits, but whether it disqualified her from further receipt of the benefits she was already receiving (offset, of course, by the pay she earned during the week she worked for DK Harris).

8. Due to our disposition of this matter, we need not consider the other issues raised by Claimant in this appeal.