IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Priscilla Spencer, | : | |
| Petitioner | : | |
| | : | No. 1318 C.D. 2015 |
| v. | : | |
| | : | Submitted: December 24, 2015 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                           FILED:  April 1, 2016

Priscilla Spencer (Claimant) petitions, *pro se*, for review of the May 28, 2015 order of the Unemployment Compensation Board of Review (Board) reversing a referee's decision and concluding that Claimant is ineligible for unemployment compensation under sections 4(*l*)(2)(B), 4(*l*)(4)(17), 4(u), 401, 402(h), and 404(d)(l) of the Unemployment Compensation Law (Law)[2] and the regulation at 34 Pa. Code §65.73(5).  For the reasons that follow, we vacate and remand to the Board to issue necessary findings of fact.

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§753(*l*)(2)(B), 753(*l*)(4)(17), 753(u), 801, 802(h), and 804(d)(1).

## Background

For the past fifteen years, Claimant has been seasonally employed by H&R Block as a tax professional, working full-time from January to April. In the off season, approximately May to December, Claimant works for H&R Block part-time, working one regular shift on Saturdays and other days as needed. (Notes of Testimony (N.T.), Initial Hearing, at 14.) On April 21, 2013, at the end of the tax season, Claimant filed an application for unemployment compensation benefits. Pursuant to sections 401 and 404 of the Law, the local service center determined that Claimant was eligible to receive unemployment compensation benefits, and Claimant collected twenty-four weeks of benefits from May 11, 2013, to November 19, 2013. (Record Item Nos. 1, 4.) While receiving benefits, Claimant sought further employment through the use of CareerLink. Claimant interviewed with and was hired by AFLAC as a commission-based insurance salesperson on August 14, 2013. (N.T. at 5.)

On April 30, 2014, the local service center spoke with Claimant and she completed an "Employment Status Questionnaire" via telephone, providing information concerning her work with AFLAC. On May 16, 2014, the local service center determined that Claimant was ineligible for benefits for weeks ending August 3, 2013, through November 9, 2013, because she was self-employed under section 402(h) of the Law. The local service center found that Claimant worked as an independent contractor for AFLAC; was free from AFLAC's direction or control in the performance of her job; and was customarily engaged in an independently established trade, occupation, profession, or business. (Record Item No. 4.)

Claimant appealed and a referee convened a hearing at which Claimant appeared and testified. AFLAC did not receive notice of the hearing, due to an administrative error, and was later found by the Board to have good cause for its failure to appear. At the conclusion of the hearing, the referee issued a decision reversing the legal service center's determination. Finding Claimant's testimony credible, the referee concluded that there was no competent evidence in the record to prove that AFLAC did not exercise direction and control over her work. (Record Item No. 9.)

Thereafter, AFLAC received a "Request for Relief of Charges," (N.T. at 9), and filed an untimely appeal to the Board, claiming that the referee's decision was not supported by substantial evidence and that it did not receive notice of either the hearing or the referee's decision. The Board remanded the case to the referee to act as a hearing officer for the Board, and both Claimant and an AFLAC representative, Andrew Luadzers (Luadzers), appeared and testified. (Record Item Nos. 12, 16.)

At the remand hearing, Luadzers testified that all AFLAC associates, like Claimant, are not required to work a set amount of hours and are not required to work at any specific location. Luadzers testified that AFLAC did not require Claimant to check in or out at the beginning and end of each day, did not have a policy specifying the amount of hours Claimant was required to work, and did not require Claimant to use a time clock or a printed schedule to record her hours. Luadzers further stated that all AFLAC associates were paid solely by commission, filed their own 1099 tax forms, and were not required to attend any training or meeting sessions unless the associates wanted to. According to Luadzers, AFLAC associates are not supervised by any AFLAC managers and are permitted to hire their own support staff if they so desired. Luadzers also said that the sales associates were

3

responsible for finding their own clients and had the freedom to determine the manner in which to solicit insurance contracts. In addition, Luadzers testified that AFLAC did not reimburse the sales associates for any expenses incurred during the solicitation of insurance contracts. (N.T. at 6-11.)

Luadzers added that AFLAC entered into a nonexclusive, independent contractor agreement with Claimant, and this agreement permits Claimant to work for other competitor insurance companies while denoting her status as an independent contractor. Luadzers stated that sales associates could work as much or as little as they pleased and their "success depends on them individually . . . ." (N.T. at 7.) Luadzers further explained that AFLAC does not keep track of hours worked and the only thing AFLAC records is an insurance policy that has been executed by a sales associate so the amount of the commission could be determined. According to Luadzers, the commission-based pay for sales associates is the only form of compensation and commission pay depends solely on what the sales associates produce in terms of executing insurance contracts. (N.T. at 7-8, 10.)

When questioned at the remand hearing, Claimant testified that between the months of August and November of 2013, she was studying part-time to obtain her Health and Life Insurance License with the eventual goal of starting her own business selling insurance. Claimant stated that during the weeks of August 3, 2013, through October of 2013, she was studying to obtain her license, while also working part-time for AFLAC, and did not actually sell any insurance for AFLAC during this time. Claimant stated that H&R Block, rather than AFLAC, was her official employer and that she tried to start her own business selling insurance but was unsuccessful. (N.T. at 12-14.)

During the first hearing, Claimant testified that she did not receive any income from AFLAC until October 28, 2013, when she received a commission check for approximately $4,168.00. Claimant also stated that she received a second commission check of approximately $280.00 from AFLAC on November 12, 2013. According to Claimant, AFLAC paid her a total of roughly $4,448.00 in commission for her work in the final quarter of 2013. Claimant explained that when she signs or executes an insurance contract, AFLAC will provide her with a 30% commission. Claimant stated that she was working part-time for AFLAC – particularly, when someone would call her for insurance, she would meet with the person – and that she tried to increase her hours with AFLAC. Finally, Claimant testified that while working for AFLAC part-time, she also works for H&R Block part-time, working one regular shift on Saturdays and other days as needed. (N.T., Initial Hearing, at 11-13.)

By decision dated May 28, 2015, the Board reversed the referee's decision and made several findings of fact. The Board found that since 2012, Claimant has worked for H&R Block between the months of January and April as a seasonal employee. The Board further found that, after successfully filing an application for unemployment benefits effective April 21, 2013, Claimant pursued further employment through CareerLink, which sent Claimant for an interview with AFLAC. (Findings of Fact at Nos. 1-6.)

In addition, the Board found that Claimant first agreed to perform services for AFLAC on August 13, 2013. The Board found that Claimant signed an independent contractor agreement with AFLAC; was not restricted from selling insurance for other insurance companies; was not supervised by AFLAC; and could make her own work schedule, including the decision to work full-time or not at all.

5

The Board also found that Claimant was not required to use AFLAC offices for work, could choose to attend voluntary training sessions, and was not required to submit regular reports or meet any particular quota. Furthermore, the Board found that Claimant was paid solely by commission, received no fringe benefits, filed her own 1099 forms, and paid her own taxes. Finally, the Board found that AFLAC did not receive notice of the first hearing or the referee's initial decision because both were mailed to an incorrect address. (Findings of Fact Nos. 7-18.)

Based on these findings, and crediting the testimony of Luadzers, the Board determined that AFLAC had established good cause for its failure to appear at the first hearing and that its untimely appeal was excusable. The Board also concluded that Claimant was ineligible for unemployment compensation benefits for the following three reasons. (Board's decision at 2.)

First, the Board concluded that Claimant was not subject to the control and direction of AFLAC because she was free to work for other insurance companies. In support of its conclusion, the Board cited section 4(*l*)(2)(B) of the Law,[3] which, in part, states that an employer's lack of direction and control over the performance of work tends to render an individual an independent contractor rather than an employee. Second, the Board determined that Claimant's commission-based wages from AFLAC were excluded from "employment" pursuant to section 4(*l*)(4)(17) of

---

[3] In pertinent part, this section states "services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business." 43 P.S. §753(*l*)(2)(B).

6

the Law,[4] which states that the term "employment" does not include commission-based services performed by an insurance agent. Third, and finally, the Board cited 34 Pa. Code §65.73[5] and found that Claimant limited the number of hours per week that she worked and, therefore, was engaged in full-time employment. Accordingly, the Board determined that Claimant was "fully employed" pursuant to sections 401[6] and 4(u)[7] of the Law because she worked as many hours as she chose. Due to the Board's findings that Claimant was an independent contractor and was fully-employed as such, the Board made an overall, general conclusion under section 402(h) of the Law[8] that Claimant was ineligible for unemployment compensation benefits because she engaged in full-time self-employment. (Board's decision at 2-3.)

---

[4] This provision provides that the term "employment" shall not include "service performed by an individual for an employer as an insurance agent . . . if all such service performed by such individual for such employer is performed for remuneration solely by way of commission." 43 P.S. §753(*l*)(4)(17).

[5] "If a claimant limits the number of hours per week the claimant will work, that number of hours constitutes the claimant's full-time work." 34 Pa. Code §65.73(a)(5).

[6] Section 401 of the Law provides that "[c]ompensation shall be payable to any employe who is or becomes unemployed." 43 P.S. §801.

[7] In relevant part, this statutory proviso defines "unemployed" as follows: "An individual shall be deemed unemployed . . . with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit." 43 P.S. §753(u).

[8] Section 402(h) provides that an employee shall be ineligible for compensation for any week in which he is engaged in self-employment. 43 P.S. §802(h).

## Discussion

On appeal to this Court,[9] Claimant argues that her job as a personal tax consultant for H&R Block is her primary employment and that her part-time employment as an insurance agent for AFLAC is "like her side business." (Claimant's brief at 9.) In this regard, Claimant stresses that the Board determined her eligibility for compensable weeks ending August 3, 2013, through November 9, 2013; that she started studying to get her insurance license in August 2013 and did not receive a commission until October 28, 2013; and that, during this time, she worked for H&R Block approximately 4 to 12 hours per week. Claimant further contends that financial documentation shows that although she received $4,447.00 in gross commissions from AFLAC, she obtained a net profit of only $252.00 after deducting expenses. Finally, Claimant asserts that the evidence established that she was an employee, rather than an independent contractor, because AFLAC provided her with office space, encouraged her to attend meetings, and gave her training books.

Section 4(*l*)(2)(B) of the Law sets forth a presumption that one who performs services for wages is an employee — and thus not ineligible for benefits under section 402(h) — as opposed to an independent contractor — who is ineligible for benefits under section 402(h). *Stage Road Poultry Catchers v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 34 A.3d 876, 889 (Pa. Cmwlth. 2011). However, the presumption in favor of employee status is overcome and the claimant will be considered an independent contractor if the putative employer establishes that: (1) the claimant was free from control and

---

[9] Our scope of review in an unemployment compensation appeal is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. §704; *Leace v. Unemployment Compensation Board of Review*, 92 A.3d 1272, 1274 n.2 (Pa. Cmwlth. 2014).

8

direction in performing the services; and (2) the services are of a type customarily performed in an independent trade or business. *CE Credits Online v. Unemployment Compensation Board of Review*, 946 A.2d 1162, 1167 (Pa. Cmwlth. 2008). The issue of whether an individual is an employee or independent contractor under section 4(l)(2)(B) of the Law is a question of law, subject to this Court's review. *Stage Road Poultry Catchers*, 34 A.3d at 888.

As to the first prong, the existence of an independent contractor agreement is not dispositive, although it is a significant factor to be considered. *Stage Road Poultry Catchers*, 34 A.3d at 889. Other factors include: whether there is a fixed rate of remuneration; whether taxes are withheld from the individual's pay; whether the employer supplies the tools necessary to carry out the services; whether the employer provides on-the-job training; and whether the employer holds regular meetings that the individual was expected to attend. *Id.*

With regard to the second prong, the following three factors generally guide our inquiry: (1) whether the claimant is able to work for more than one entity; (2) whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services; and (3) whether the claimant worked on a job-by-job basis and was free to accept or reject assignments. *Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 892 A.2d 781, 797-98, 801-02 (Pa. 2006); *Gill v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 26 A.3d 567, 570 (Pa. Cmwlth. 2011). Where the employee is free to accept or reject an assignment, or has sole control over the days in which he/she will work, the individual is generally not considered to look to a single employer for the continuation of such services. *Danielle Viktor*, 892 A.2d at 801.

9

Moreover, as part of the second prong, the putative employer must also demonstrate "that the claimant [was] *customarily* engaged in such trade or business in order to be considered self-employed." *Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593, 598 (Pa. Cmwlth. 2012) (en banc) (emphasis in original).

In this case, we conclude that the Board's findings of fact support its legal conclusions that Claimant was free from AFLAC's control and direction in performing her services and that the services are of a type performed in an independent trade or business. As the Board found, Claimant signed an independent contractor agreement; was free to work for other insurance companies; was not supervised by AFLAC; was not required to attend any training sessions; made her own schedule with AFLAC; could use AFLAC offices or work from home; was paid solely by commission, received no fringe benefits, and paid her taxes on a 1099 form; did not have to submit regular reports or meet a quota; and could choose the hours, if any, she wanted to work. (Findings of Fact Nos. 7-17.) *See Stage Road Poultry Catchers*, 34 A.3d at 890-92 (concluding that both factors were met where the evidence demonstrated that the individuals did not receive a fixed rate of remuneration and got to choose the time, place, and location of the job on a job-by-job basis; the putative employer did not withhold taxes from the individuals, did not provide tools or equipment, and did not provide training or instruction; and the individuals were free to work for other companies and could reject a job assignment). With these findings being supported by substantial evidence, namely Luadzers's testimony, (N.T. at 6-12), the fact that Claimant may have adduced evidence to the contrary is immaterial and not a basis for reversal. *Ellis v. Unemployment Compensation Board of Review*, 59 A.3d 1159, 1164 n.4 (Pa. Cmwlth. 2013) ("The

10

fact that a claimant may have given a different version of events, or . . . might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings.").

However, and most significantly, the Board failed to make any findings or legal determination as to whether Claimant was "customarily engaged" in the business of selling insurance. *See Minelli*, 39 A.3d at 598. Indeed, in its brief to this Court, the Board overlooks the "customarily engaged" analysis altogether. (*See* Board's brief at 11.) We have repeatedly noted that in proceedings such as these, where the claimant is already receiving benefits, the question presented is not whether the work at issue would entitle the claimant to benefits, but, rather, whether it disqualifies the claimant from further receipt of benefits he is already receiving. *Minelli*, 39 A.3d at 598 n.7. On this reasoning, this Court has determined that the Law requires the putative employer to demonstrate "an additional element, that the claimant be *customarily* engaged in such trade or business in order to be considered self-employed." *Id.* at 598 (emphasis in original).

For example, in *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893 (Pa. Cmwlth. 2011), this Court generally concluded that "the fact that an unemployed person agrees to accept, and thereafter does accept, an occasional offer of work is simply not enough to demonstrate that said individual is customarily engaged in an independently established trade, occupation, profession or business." *Id.* at 898. In *Teets v. Unemployment Compensation Board of Review*, 615 A.2d 987 (Pa. Cmwlth. 1992), which was discussed at length in *Silver*, this Court explained that, in the case before it, there was "no finding and no evidence presented as to the level of time and effort claimant put into" the putative employer's pyramidal sales program, and we determined "the fact that an activity which may

11

generate a limited amount of income is not undertaken . . . does not automatically make it 'self-employment.'" *Id.* at 989. *See Minelli*, 39 A.3d at 598 ("[T]his occasional offer of a limited amount of work over such a short time period is simply not enough to demonstrate that [Claimant] is customarily engaged in an independently established trade, occupation, profession or business.") (citations and internal quotations omitted); *Buchanan v. Unemployment Compensation Board of Review*, 581 A.2d 1005, 1009 (Pa. Cmwlth. 1990) ("We decline, however, to find that the act of setting up a booth at a weekly flea market constitutes customary engagement in an independently established trade, occupation, profession or business under Section 4(*1*)(2)(B) of the Law."). *See also Silver*, 34 A.2d at 896 n.7 ("Obviously an unemployed individual can accept occasional assignments for remuneration without being 'customarily engaged in an independently established trade, occupation, profession or business.'").

As the above case law illustrates, it is imperative that the Board make specific findings regarding the nature and extent of a claimant's efforts in order to determine whether the claimant was "customarily engaged" in a trade or business. No such findings were made here.

Consequently, this Court is left without the necessary findings as to whether Claimant was customarily engaged in an independent trade or business, as required by the *Silver* line of cases. Therefore, we will vacate the Board's order and remand this matter to the Board to make findings and a legal conclusion, based upon the existing record, as to whether AFLAC demonstrated that Claimant was customarily engaged in an independent trade or business. *See, e.g., Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 961 A.2d 261, 265 (Pa. Cmwlth. 2008) (vacating the Board's order and remanding for additional

12

findings where the decision the Board adopted did not contain adequate factual findings for applying the independent contractor test).

Moreover, to the extent that Claimant argues that she was engaged in the "sideline activity" exception to the general disqualification for self-employment, the Board also failed to make the necessary findings of fact.[10] "Under Section 402(h) of the law, an employee who engages in self-employment is ineligible for benefits unless (1) the self-employment began prior to the termination of the employee's full-time employment; (2) the self-employment continued without substantial change after the termination; (3) the employee remained available for full-time employment; and (4) the self-employment was not the primary source of the employee's livelihood." *Frimet v. Unemployment Compensation Board of Review*, 78 A.3d 21, 28 (Pa. Cmwlth. 2013) (citations and italics omitted).

Here, there is evidence that Claimant was still working for H&R Block, albeit on a limited basis, when she took a part-time position with AFLAC. On the present record, an issue of fact exists regarding the amount of time Claimant worked for H&R Block during the off-season and whether, or at what point in time, Claimant could be considered to have been terminated or separated from her employment with H&R Block. There are also factual issues regarding the second, third, and fourth

_____

[10] In its brief, the Board asserts that Claimant waived this issue for failing to raise it during the proceedings below. However, in a letter submitted to the Board prior to the second hearing, Claimant argued that she should not be considered to be self-employed because H&R Block is her official employer and her job with AFLAC was something that she did on a part-time basis when the tax season ended. (Record Item No. 17.) Further, Claimant testified that H&R Block was her primary employer and source of income and that she only worked for AFLAC during the off-season in an attempt to make supplemental income. (N.T. at 13-14; N.T., Initial Hearing, at 7-8.) Finally, in her petition for review, Claimant contended that she met the exception for "Self-Employment/Side Business." (Petition for Review, p. 5.) Given this record, we conclude that Claimant properly preserved the issue as to whether her work with AFLAC constituted a "sideline activity."

elements of the "sideline activity" exception. Accordingly, we will also remand this matter to the Board to make findings, pertinent credibility determinations, and a legal conclusion, based upon the existing record, as to whether Claimant demonstrated that she was embarking on a "sideline activity." *See Resource Staffing, Inc.*, 961 A.2d at 265.

On remand, after the Board makes its necessary findings of fact and legal conclusions, the Board shall issue a new decision reflecting and accounting for those findings and legal conclusions.

Finally, we cannot affirm the Board on alternative grounds under sections 4(*l*)(4)(17) and 4(u) of the Law, and 34 Pa. Code §65.73(5),[11] which governs

---

[11] In pertinent part, 34 Pa. Code §65.73 provides:

§65.73. Full-time work.

(a) A claimant's full-time work for purposes of section 4(u) of the law (43 P.S. §753(u)) shall be determined in accordance with the following:

(1) Except as provided in paragraphs (4) and (5), a claimant's full-time work is determined by reference to the claimant's base year, as follows:

\* \* \*

(4) If a claimant voluntarily leaves employment to accept new employment that provides fewer hours of work, the number of hours the claimant customarily works at the new job constitutes the claimant's full-time work.

(5) If a claimant limits the number of hours per week the claimant will work, that number of hours constitutes the claimant's full-time work.

34 Pa. Code §65.73(a)(1), (4) and (5).

"employment" for purposes of section 4(u) of the Law. This Court has already held that even if an individual receiving unemployment benefits is deemed "employed" for purposes of section 4(u) of the Law, the individual is nonetheless still eligible to continue to receive unemployment compensation benefits when the individual receives a commission-based pay as stated in section 4(*l*)(4)(17) of the Law. *Shoemaker v. Unemployment Compensation Board of Review*, 588 A.2d 100, 103 (Pa. Cmwlth. 1991) ("Applying section 4(*l*)(4)(17) of the act to the board's findings of fact, we conclude that claimant's employment was 'performed for remuneration solely by way of commission. . . .' Even if claimant was 'employed' within the meaning of section 4(u), the facts show that she was a real estate salesperson working solely on commission and is therefore still eligible for unemployment compensation benefits pursuant to section 4(*l*)(4)(17) of the act."). Therefore, pursuant to *Shoemaker*, the fact that Claimant may be considered "employed" for purposes of section 4(u) is superseded by the fact that she is deemed to be "unemployed" under section 4(*l*)(4)(17) because she is an insurance salesperson earning commission-based pay.[12] Accordingly, we decline to affirm the Board on these legal theories.[13]

---

[12] On this note, the Board's reliance on *Unemployment Compensation Board of Review v. Miedama*, 365 A.2d 900, 902 (Pa. Cmwlth. 1976), is misplaced. In *Miedama*, this Court held that a travel agent who volunteered her services to another travel agency in order to continue servicing her clients was "employed" within the meaning of section 4(u) and therefore precluded from receiving benefits. However, unlike Claimant's position as an insurance salesperson, a travel agent is not included in section 4(*l*)(4)(17) of the Law. *See* 43 P.S. §753(*l*)(4)(17) (stating that the term "employment" shall not include "[s]ervice performed by an individual for an employer as an insurance agent or real estate salesman or as an insurance solicitor or as a real estate broker or as a solicitor of applications for, or salesman of, shares of or certificates issued by an investment company, or as an agent of an investment company, if all such service performed by such individual for such employer is performed for remuneration solely by way of commission, or services performed by an individual as an unsalaried correspondent for a newspaper, who receives no compensation, or compensation only for copy accepted for publication.").

**(Footnote continued on next page…)**

## Conclusion

For the above-stated reasons, we vacate the Board's order and remand for the Board to issue necessary findings with respect to whether Claimant was "customarily engaged" in self-employment and whether Claimant was engaged in a "sideline activity." On remand, the Board shall make its findings based upon the

---

**(continued…)**

Therefore, whereas *Shoemaker* addressed the interplay of section 4(u) and section 4(*l*)(4)(17) of the Law, *Miedama* did not, and *Shoemaker* is the controlling authority in this matter. For the same reasons, 34 Pa. Code §65.73(5) is inapplicable because it pertains solely to section 4(u) of the Law and does not otherwise negate the displacing effect that section 4(*l*)(4)(17) has on section 4(u).

[13] Moreover, we note that there is no substantial evidence of record to support a finding that, in all practicality, Claimant could have worked more hours but declined to do so. The fact that Luadzers testified that AFLAC associates could work as many hours as they wanted, in and of itself, does not prove that Claimant took affirmative action to limit the number of hours she could have reasonably worked given her particular situation. *Cf. McConville v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 32 C.D. 2015, filed November 10, 2015) (unreported) (concluding that the claimant was fully-employed under section 4(u) and 34 Pa. Code §65.73(5) where the claimant was notified of and declined to work 22 shift assignments); *Dillard v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 2010 C.D. 2014, filed July 31, 2015) (unreported) (same, the claimant unilaterally informed the employer that she would be reducing her hours from full-time work to part-time work and then worked part time).

16

existing record and shall issue a new decision reflecting these new findings and their accompanying legal conclusions.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Priscilla Spencer,                             :
          Petitioner          :
                              :   No.  1318 C.D. 2015
          v.                          :
                              :
Unemployment Compensation      :
Board of Review,                       :
          Respondent          :

## *__ORDER__*


AND NOW, this 1ˢᵗ day of April, 2016, the May 28, 2015 order of the Unemployment Compensation Board of Review (Board) is vacated and the case is remanded to the Board to issue additional findings and a new decision in accordance with this memorandum opinion.

Jurisdiction relinquished.


_____
PATRICIA A. McCULLOUGH, Judge