IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Humanus Corporation,                     :
                        Petitioner       :
                                         :
            v.                           :    No. 307 C.D. 2019
                                         :    Submitted: March 26, 2020
Unemployment Compensation Board          :
of Review,                               :
                        Respondent       :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                              FILED:  May 13, 2020


            Humanus Corporation (Humanus) petitions for review from an order of

the Unemployment Compensation Board of Review (Board) finding Cieaira

Matthews (Claimant) eligible for unemployment compensation (UC) benefits under

Section 402(h) of the Pennsylvania Unemployment Compensation Law (Law),[1] after

concluding Claimant was not self-employed.  Humanus asserts that the Board erred

as a matter of law in determining that Claimant was not self-employed, where there

was substantial evidence to the contrary.  Discerning no error below, we affirm.


            On August 8, 2018, Claimant signed an independent contractor

agreement with Humanus to provide services to Philadelphia Academy Charter

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§802(h).

School (PACS) as a personal care assistant to children with behavioral needs. Resp't's Br. at 2; Bd. Op., 2/14/19, Finding of Fact (F.F.) No. 2. Claimant stopped providing services to PACS after October 4, 2018. Resp't's Br. at 3; F.F. No. 10. Claimant subsequently filed an application for UC benefits which was granted by the local service center on October 18, 2018. Pet'r's Br. at 5; Certified Record (C.R.), Item No. 5. Humanus appealed the determination, and a referee conducted a hearing. On November 30, 2018, the referee entered a decision affirming the determination of the UC service center, stating that "Claimant is eligible for benefits beginning with compensable week ending August 25, 2018."[2] C.R., Item No. 10, Referee's Decision/Order. Humanus appealed to the Board which made the following findings of fact:

> . . . .
> 3. When completing her Form W-9 for Humanus, the claimant provided her social security number and personal name, rather than an employer identification number and business or fictional name.
>
> 4. Humanus provided referrals for the claimant, which she was permitted to accept or refuse.
>
> 5. The claimant was appropriately credentialed and required no additional training to provide service.
>
> 6. Humanus provided no tools or equipment to the claimant.
>
> 7. PACS had the right to establish rules for the claimant to follow and assign the claimant to a student, after which the student's individualized education program was discussed and hours of services were negotiated.
>
> 8. The claimant was permitted to subcontract her services.

---

[2] The timeline reflected in the record is somewhat enigmatic. However, the specific dates are not material to the issue presented for our consideration on appeal.

9. The claimant submitted weekly invoices to Humanus on a form provided by Humanus.

10. The claimant provided services to PACS through Humanus from August 21 through October 4, 2018.

11. Humanus paid the claimant $12.50 per hour, a rate established by agreement between the claimant and PACS, and from which no taxes were withheld.

12. The claimant's contract with Humanus prohibited her from working directly for the client for twenty-four months after her relationship with Humanus ended.

C.R., Item No. 12 (Bd. Op., 2/14/19) at 1-2.

The Board looked at a number of factors in determining whether Claimant was free from Humanus's control or direction in performing her work. The Board stated that Humanus "paid the Claimant an hourly rate, proposed by PACS and accepted by the claimant, and from which no taxes were withheld. The claimant required no additional training and Humanus provided no tools or equipment to her. The claimant's schedule and location of work were determined by PACS, as was any supervisory authority. The claimant was permitted to refuse assignments." C.R., Item No. 12, Bd. Op. at 2. The Board determined that Claimant was free from direction or control when performing services. The Board further determined that Claimant had a say in the negotiation of her pay, had the education and training to perform similar duties for others but that there was no evidence that Claimant advertised she could independently perform similar work for others or that she took any steps to form a business. The Board noted that Claimant provided her social security number and personal name, rather than an EIN and a business or fictitious name, when she completed her W-9 form. C.R. Item No. 12, Bd. Op. at 3.

3

The Board concluded that Claimant was not customarily engaged in an independently established profession. Thus, she was not self-employed, and her unemployment benefits could not be denied. Accordingly, the Board affirmed the order of the UC referee. C.R. Item No. 12, Bd. Op. at 3.

Humanus filed a petition for review,[3] arguing that the Board erred "in determining that Claimant was not self-employed, despite substantial evidence[4] to the contrary." Pet'r's Br. at 3.

Section 402(h) of the Law, 43 P.S. §802(h), states:

An employe shall be ineligible for compensation for any week—

In which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood. Net earnings received by the employe with respect to such activity shall be deemed

---

[3] Our review is limited to determining whether the Boards finding were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011 (Pa. Cmwlth. 2008). The Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence. *Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422 (Pa. 2003).

[4] "Substantial evidence is defined as evidence a reasonable mind might accept as sufficient to support the conclusion reached." *Frimet v. Unemployment Comp. Bd. of Review*, 78 A.3d 21, 26 n.7 (Pa. Cmwlth. 2013).

remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department.

The Law does not define "self-employment." However Section 4(l)(2)(B) of the Law defines "employment" as:

Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the [Department] that – (a) such individual has been and will continue to be free from control or direction over their performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.[5]

*Lowman v. Unemployment Comp. Bd. of Review*, 178 A.3d 896, 900 (Pa. Cmwlth. 2018) (*en banc*), *appeal granted* 199 A.3d 862 (Pa. 2018).

"The separating employer who asserts that the claimant is ineligible for benefits by reason of "self-employment" bears the burden of proving that the claimant's relationship was that of an independent contractor, not an employee." *Id.* (citing *Pasour v. Unemployment Comp. Bd. of Review*, 54 A.3d 134, 137 (Pa. Cmwlth. 2012)). "It is necessary for the separating employer to prove both of the elements of Section 4(l)(2)(B)." *Lowman,* 178 A.3d at 900, citing *Minelli v. Unemployment Comp. Bd. of Review*, 39 A.3d 593, 596 (Pa. Cmwlth. 2012). "A claimant who is entitled to unemployment compensation from his separating

---

[5] Parts (a) and (b), as noted here, are commonly referred to as the "two-prong test" to determine whether an applicant for unemployment benefits was an employee or independent contractor at the time of separation from employment. *Lowman*, 178 A.3d at 900 (Pa. Cmwlth. 2018).

employer may lose his compensation if he takes a positive step toward establishing an independent business." *Lowman*, 178 A.3d at 900.

On appeal to this Court, Humanus agrees that the Board "correctly determined that Claimant was free from the control or direction of Humanus in performing her services." Pet'r's Br. at 8. However, Humanus argues that the Board erred when it determined that Claimant was not "customarily engaged in an independently established trade, occupation, profession or business while performing services" and when it determined that there was no evidence Claimant "could or did perform similar services independently for other companies." *Id.* Humanus notes that Claimant was allowed to perform services for other employers, concurrently, "as are all of the individuals that Humanus refers to clients." Pet'r's Br. at 9. Humanus adds that "[t]he fact that Claimant potentially did not is without merit and should not have been considered by the [Board] in its [d]ecision." *Id.*

In response to Humanus's contentions on appeal, the Board argues that this Court has recognized an individual's independence when "one undertakes an activity in an entrepreneurial spirit with all intentions of starting a new business, trade, profession or occupation." *Buchanan v. Unemployment Comp. Bd. of Review*, 581 A.2d 1005, 1008 (Pa. Cmwlth.1990). The Board notes that "[t]his Court has considered a number of factors under this analysis: incorporation; advertising or soliciting; obtaining insurance; purchasing equipment; and intending to establish an independent business, rather than just earn extra money." Resp't's Br. at 7, *citing McKean v. Unemployment Comp. Bd. of Review,* 94 A.3d 1110, 1113-14 (Pa. Cmwlth. 2014) (*citing Buchanan*, 581 A.2d at 1009).

6

In the present matter, the Board asserts that Claimant was hired on a job-to-job basis but that there was no evidence she had incorporated. The Board also points out that Claimant used her social security number and personal number, rather than an EIN and business or fictitious name when she completed her W-9 form. The Board notes that the record contains no evidence Claimant maintained liability insurance (although the Board acknowledged that Claimant's contract with Employer required her to) and that the record gave no evidence that Claimant ever advertised or independently solicited her services, purchased equipment, or intended to establish an independent business. The Board added: "Claimant's CPR and mandated reporter training were completed on August 7 and 8, 2018, presumably in anticipation of signing a contract with Humanus on August 8, 2018. These are not the actions of one engaged in an independent business venture." Resp't's Br. at 7-8. In sum, the Board maintains that "Claimant did not take any positive steps toward establishing her own business enterprise and, thus, she was not self-employed." Resp't's Br. at 8.

Humanus contends that the evidence of record demonstrates that Claimant was self-employed. Humanus notes that to satisfy the second prong of the two-part test, the Court will look to three relevant factors: "(1) whether the claimant was also able to perform the same services for others; (2) whether the nature of the business compelled the claimant to perform those services for a single employer; and (3) whether the claimant worked on a job-by-job basis and was free to accept or reject assignments." Pet'r's Br. at 13, *citing Danielle Viktor, Ltd. V. Dept. of Labor and Industry, Bureau of Employer Tax Operations*, 892 A.2d 781 (Pa. Cmwlth.

7

2006); *Stage Road Poultry Catchers v. Dept. of Labor and Industry, et. al.,* 34 A.3d 876 (Pa. Cmwlth. 2011); *Gill v. Dept. of Labor and Industry, Office of Unemployment Compensation Tax Services*, 26 A.3d 567 (Pa. Cmwlth. 2011).

Put concisely, Humanus argues that, since Claimant was able to provide services to more than one entity, could look to more than one entity for assignments, worked on a job-by-job basis, and was free to accept or reject assignments, she was self-employed.  Humanus maintains that the fact that the record was devoid of any evidence Claimant actually worked for other entities is immaterial.  Citing *Stage Road Poultry Catchers,*[6] Humanus notes that this Court has previously rejected, as "problematic" (and potentially resulting in "an unworkable framework"), the idea of mandating an analysis of whether individuals working for a putative employer choose (or choose not) to perform such work for third parties.  In *Stage Road Poultry Catchers*, 34 A.3d at 891-892, this Court noted that "[u]nder these circumstances, the determination would have nothing to do with the activities of the putative employer and its relationship with the individuals, but rather the determination of employer or independent contractor status would be dependent on the activities of the *individuals* and *third parties*."

---

[6] In *Stage Road Poultry Catchers*, this Court determined that individuals who worked catching chickens for Stage Road Poultry Catchers were engaged in a business, trade, or occupation where the chicken catchers were (1) free to accept or reject assignments, (2) free to catch chickens for another entity, and (3) free to decide whether to provide services on a job-by-job basis.  We held that the Department erred when it determined that the chicken catchers were not free from direction and control in the performance of their work.  In addition, we noted "[a]lthough poultry catching may not require advanced skill sets, this does not preclude a finding of it being a trade, occupation, or business." *Id.*, at n. 11.

8

The Board responded to Humanus's assertion by noting that this Court, in *Lowman*, "established that *the issue is not the relationship between a claimant and an entity for which she is providing services*, including whether she was permitted to provide similar services for other entities, *but the activities of the claimant herself*." Resp't's Br. at 8. *See Lowman*, 178 A.3d at 901 (emphasis added).

Humanus argues that the Board's reliance on *Lowman* is flawed. In *Lowman*, the claimant had lost his job in the behavioral health field and started working as an Uber driver to earn extra money while attempting to find new employment in the behavioral health field. Humanus suggests that the claimant in *Lowman* was much like the claimant in *Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593 (Pa. Cmwlth. 2012)[7] in which this Court determined that a claimant who was otherwise eligible for unemployment benefits was not considered to be self-employed if he accepted "occasional work" on an as-needed basis. Pet'r's Reply Br. at 3, citing *Lowman* 178 A.3d at 901-902. Humanus further argues that the present matter is distinguishable from *Lowman* and *Minelli* because this is not an "extra money" or "side activity" case. Pet'r's Reply Br. at 3. Humanus

---

[7] In *Minelli*, this Court reversed a Board order denying benefits to a claimant who was last employed as a consultant by DK Harris Consulting, pursuant to an independent contractor agreement. In *Minelli,* the claimant worked a total of 22 hours and used her own equipment, signed an independent contractor agreement, submitted an invoice for her services and was free to perform work for other parties. In *Minelli*, this Court determined that the claimant performed work for DK Harris Consulting on an "as needed" basis and had ultimately performed just 22 hours of work over three days and that this was "'simply not enough to demonstrate that [Claimant] is customarily engaged in an independently established trade, occupation, profession or business."' *Minelli,* 39 A.3d at 598, citing *Silver v. Unemployment Comp. Bd. of Review*, 34 A.3d at 893, 898 (Pa. Cmwlth. 2011).

9

argues that Claimant, here, took positive steps toward embarking on an independent trade/business, noting that the record indicates Claimant accepted PACS' offer of a full time position. Humanus asserts that Claimant's completion of CPR and mandated reporter training represented clear actions of an individual 'customarily engaged in an independent established trade, as opposed to a sideline business, simply looking to earn some "extra money."' Pet'r's Reply Br. at 3-4.

Humanus argues that Claimant, in the present matter, is more like the claimant in *Pasour*. In *Pasour*, the claimant, who had worked as a full time attorney for the Philadelphia Housing Authority (PHA) from June 2003 to May 27, 2011[8], applied to Abelson Legal Services (Abelson), an attorney referral company. Beginning in May 2011, the claimant performed six or seven weeks of work reviewing subrogation files for a client of Abelson's. When that work ended, the claimant filed for UC benefits and was determined to be eligible because the UC service center found claimant was not free from direction and control in performing his job. On appeal, the UC referee determined that the claimant was an independent contractor and was ineligible for UC benefits. The Board affirmed the UC referee, which held that the claimant was customarily engaged in an independently established trade or business. The claimant appealed to this Court which affirmed the Board. In so doing, we looked to the fact that, during his work with Abelson, the claimant was free to accept or reject other assignments, the claimant's profession as an attorney was free standing, the claimant's agreement with Abelson clearly stated he was an independent contractor, and that the claimant's work arrangement with Abelson was non-exclusive. We also noted that when the claimant signed on

---

[8] In a footnote, we noted that the claimant had indicated he was on paid suspension with PHA from February 4, 2011 until May 27, 2011, after which he was terminated.

10

with an attorney referral agency, he "held himself out as capable of performing his services for anyone who wished to avail himself of [those] services." *Pasour*, 54 A.3d at 139, citing the UC referee's opinion. In addition, we noted the importance of the UC referee's determination in the case that, by the terms of his independent contractor agreement, the claimant "was not compelled to look to only a single employer." *Id.* In light of the arguments of Humanus and the Board, we turn our attention to the matter *sub judice*.

In the case before us, we cannot say that Claimant was customarily engaged in an independently established trade or business. There is no dispute that, among other things, Claimant signed an independent contractor agreement to provide full time personal care assistant services at PACS, that Humanus provided referrals to Claimant which she was permitted to accept or refuse, and that Humanus did not provide Claimant with any tools or equipment. The record also establishes that Claimant was free from Humanus's control in performing her work. We acknowledge that these factors are indicia of a certain amount of independence. However, we also note from the outset that the act of signing an independent contractor agreement does not, in and of itself, establish independent contractor status. *Sharp Equipment Co. v. Unemployment Comp. Bd. of Review*, 808 A.2d 1019 (Pa. Cmwlth. 2002). And, we note further that, "in concluding whether an employment relationship exists, no single factor is controlling." *Clark v. Unemployment Comp. Bd. of Review*, 129 A.3d 1272, 1278 (Pa. Cmwlth. 2015). However, the issue we must confront, here, is whether Humanus met its burden on the second-prong of the test set out in 4(l)(2)(B) of the Law.

11

Humanus argues that the UC referee, and subsequently, the Board, found, without evidence, that Humanus failed to satisfy the second-prong of the test. Humanus criticizes the Board's reliance on *Lowman* and suggests that *Pasour* and *Stage Road Poultry Catchers* are more instructive in the matter *sub judice*. We disagree. In our *en banc* opinion in *Lowman*, this Court re-enunciated standards set forth in our earlier opinion of *Buchanan*, in which we looked to whether the claimant took a "positive step" toward establishing a business. *Lowman*, 178 A.3d at 900, citing *Buchanan*, 581 A.2d at 1009. In *Lowman*, we looked to such factors as whether the claimant had advertised, listed a business phone number, had business cards, obtained insurance, and whether the claimant's actions reflected "an entrepreneurial spirit" or "intentions of starting a new business [or] trade." *Lowman*, 178 A.3d at 903, citing *Buchanan*, 581 A.2d at 1008.

In the present matter, there is no evidence that Claimant took any positive step toward establishing a business. As the Board maintains, Claimant's services "were not independent because she depended on Humanus to serve clients and the record lacks evidence that she incorporated, advertised, obtained insurance, purchased equipment, or intended to establish an independent business." Resp't's Br. at 5. Humanus contends that, in addition to signing an agreement acknowledging her independent contractor relationship, Claimant completed CPR and mandated reporter training, which was "indicative of an individual customarily engaged in an independently established trade, as opposed to a sideline business." Pet'r's Reply Br. at 4. However, in noting that said training occurred mere days before signing her contract with Humanus, the Board convincingly notes that "[t]hese are not the actions of one engaged in an independent business venture." Resp't's Br. at 8.

12

The determination of whether a claimant is an employee, or is self-employed, often involves drawing fine distinctions between narrow differences in facts, on a case-by-case basis. However, it is not lost on us that it was Humanus's burden to establish that Claimant, here, was self-employed and that the Board applied the test laid out most recently in our opinion in *Lowman*. Based on the substantial evidence of record and the leading law, we see no error by the Board in its determination that Humanus failed to meet its burden of proving Claimant was self-employed. Although it is true that Claimant operated with a certain amount of independence in her relationship with Humanus, there is not enough evidence of record to outweigh the Board's conclusion that Claimant did not take the positive steps necessary to be considered self-employed and was not customarily engaged in an independently established profession such that she would be ineligible for UC benefits. Accordingly, we affirm the Board's order.

_____
J. ANDREW CROMPTON, Judge

Judge McCullough concurs in the result only.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Humanus Corporation,                    :
                        Petitioner      :
                                        :
            v.                          :    No. 307 C.D. 2019
                                        :
Unemployment Compensation Board         :
of Review,                              :
                        Respondent      :

# **O R D E R**

   **AND NOW**, this 13th day of May 2020, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.


                              _____
                              J. ANDREW CROMPTON, Judge