IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liberty Transportation, Inc., :
                Petitioner :
                 :
         v. : Nos. 391, 392, 393 C.D. 2016
             : Submitted: November 18, 2016
Unemployment Compensation :
Board of Review, :
                Respondent :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI           FILED: December 22, 2016


        Liberty Transportation, Inc. (Liberty) petitions for review of orders of the Unemployment Compensation Board of Review (Board) finding Jason Saniga (Claimant) not ineligible for unemployment compensation benefits under Sections 402(h) and 402(e) of the Unemployment Compensation Law (Law)[1] because he was

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–918.10. Section 402(h) provides that an employee will be ineligible for compensation for any week:

> In which he is engaged in self-employment: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations

**(Footnote continued on next page…)**

not self-employed and was not discharged due to willful misconduct.[2]   For the reasons that follow, we affirm.

## I.

Liberty is a dispatch company that has contracts with various clients, such as Sears, to arrange for delivery drivers to deliver and install merchandise. Liberty contracts with individuals to perform the requested delivery and installation services, and does not classify the delivery drivers as employees or own any of the trucks used to perform the delivery services.

---

**(continued…)**

> undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood.  Net earnings received by the employe with respect to such activity shall be deemed remuneration paid or payable with respect to such period as shall be determined by rules and regulations of the department.

43 P.S. § 802(h).  Section 402(e) precludes an employee from compensation for any week:

> In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act[.]

43 P.S. § 802(e).

[2] We granted the Board's Motion for Consolidation of Cases and consolidated Liberty's three appeals.

In October 2009, Claimant executed a Contractor Agreement (Agreement) with Liberty to perform delivery and installation services for Sears' customers. Under the Agreement, Claimant was designated as a "contractor" who "is the owner and/or lessee of certain motor vehicle(s) hereinafter described and desires to provide services to Liberty…." (Reproduced Record (R.R.) at 508a.) The Agreement provided that Claimant had the ability to hire employees or helpers at his own expense and discretion; that he had the freedom to accept or refuse loads; that Liberty did not guarantee minimum stops or payments; that Claimant had to pay all direct costs incidental to the vehicle; and that Liberty would pay Claimant a contracted rate as set forth by Liberty's contract compensation schedule but would not provide any benefits or insurance, including, but not limited to, vacation pay, sick leave, disability, health benefits or holiday pay. Claimant bought his own box truck and was permitted to use it for his personal and other business use. He received a Form 1099 for tax purposes each year.

Sears schedules deliveries with its customers and provides them with a two-hour delivery window. It creates routes and manifests based on customer locations and delivery windows, and then provides the routes and manifests to a dispatcher at Liberty the night before the scheduled deliveries. Liberty's dispatcher calls and offers the manifests to its contracted delivery drivers, and the delivery drivers have the option to accept or decline the manifests. The drivers are compensated per delivery at a rate set by Sears, which the drivers cannot negotiate. Sears offers monetary incentives to drivers for good customer service and good customer survey scores, and the incentives are received from Sears by Liberty and then distributed to the drivers. The drivers' work schedules are dictated by the Sears'

3

manifests and customer delivery windows. Sears requires that the drivers have a helper on their truck and the drivers are responsible for compensating the helpers. Sears also requires that the drivers wear a navy polo shirt with a Liberty or Sears' logo, which the drivers must purchase.

Although Claimant believed that he was free to refuse a manifest, on certain occasions Liberty's General Manager threatened to terminate his contract when he requested time off for a vacation or Fridays off to tend to his mother who was suffering from cancer. Claimant began questioning whether he was truly an independent contractor and took his concerns about the General Manager to Liberty's Senior Vice President, after which the General Manager accused Claimant of going over his head. Claimant then consulted with an attorney and began talking to other delivery drivers about his concern that they may be misclassified as independent contractors. During this time, Claimant never refused to continue accepting Sears' manifests or making deliveries for Sears. The General Manager then informed Claimant that Liberty no longer needed his services because of his negativity on the dock and bad influence over the other drivers.

The General Manager offered Claimant the opportunity to resume work as an independent contractor provided that he sign a statement agreeing not to see an attorney, not to take any action against Liberty and to stop talking to the other drivers about their independent contractor status, but Claimant refused to sign the statement to continue working as an independent contractor. Liberty subsequently terminated the Agreement, following which Claimant sold his truck. Claimant filed for UC

4

benefits and the Erie UC Service Center (Service Center) notified him that he was not financially eligible for benefits. Claimant appealed.

In a notice dated August 4, 2015, the Service Center determined that Claimant was indeed eligible for benefits. The Service Center also mailed two other determinations on August 18, 2015. One determination found Claimant was not ineligible for benefits under Section 402(h) of the Law because he was not free from direction or control in the performance of his job and, therefore, was not self-employed. The other determination found that there was insufficient evidence that Claimant had been discharged as a result of his attitude alone or as a result of a specific incident of willful misconduct and, thus, Claimant was ineligible for benefits under Section 402(e) of the Law. Employer appealed all three Service Center determinations, asserting that as an independent contractor, Claimant was ineligible for UC benefits.

After making 100 findings of fact, the Referee[3] affirmed the Service Center's determinations, finding Claimant to be financially eligible for UC benefits because Claimant was Liberty's employee and not disqualified under Section 402(h) of the Law. Reasoning that the preponderance of evidence demonstrates a significant amount of direction and control by Liberty and Sears, the Referee noted:

> [Claimant's] hours were dictated by Sears scheduling and manifests and [Liberty] had the authority to assign [Claimant's] manifest to another Delivery Driver if

---

[3] The Referee held three hearings, which were attended by Claimant and his attorney, Liberty's attorney, and various witnesses.

[Claimant] did not show up at the loading dock on time to deliver the manifest within the designated delivery windows. [Claimant] was provided training by another Driver and his helper and this training was facilitated by [Liberty] which paid [Claimant] an hourly rate during the training period. [Claimant's] work was closely monitored and supervised by [Liberty] and Sears through the use of GPS monitoring software and electronic manifest. Sears and [Liberty] provided additional training to [Claimant] at morning standup meetings through Sears' vendors who provided product information and necessary installation instructions and [Liberty's] employees who discussed safety issues and ways to improve customer satisfaction results. While [Liberty] argues that [Claimant] was free to refuse or accept manifests without repercussion, [Claimant] provided credible testimony to demonstrate that the General Manager threated [Claimant] with termination of his contract when [Claimant] attempted to take a vacation when it was inconvenient for [Liberty] and when [Claimant] attempted to take Fridays off in order to assist his ailing mother. [Claimant] further provided credible testimony to demonstrate that the General Manager exercised direction and control by denying [Claimant] the ability to use certain helpers because of personal conflicts with these individuals.

(R.R. at 481-482a.)

The Referee also found that the services Claimant performed as a delivery driver are an integral part of Liberty's principal business activity to get products delivered for its business customers, and that Claimant's specific skills associated with driving and delivering appliances are more closely aligned to a laborer's skill set rather than those of a business entrepreneur. The Referee reasoned that Claimant was not free from direction and control over the performance of his services provided to Liberty and was not engaged in an independently established trade, occupation, profession or business. Moreover, finding that Liberty terminated

6

Claimant because he questioned whether he was being misclassified as an independent contractor and because he voiced his concerns to other delivery drivers, and that there is no evidence that Claimant knowingly or deliberately violated any employer policy or rule and no evidence that he refused to continue performing services for Liberty under the terms of the Agreement, the Referee concluded that Claimant's discharge was not due to his willful misconduct and benefits cannot be denied under Section 402(e) of the Law.

On further appeal, the Board affirmed the Referee, adopting and incorporating the Referee's findings and conclusions as modified.[4]  The Board emphasized that "Liberty's [G]eneral [M]anager admitted if a driver declined to take a route when called, Liberty might retaliate by not offering them [sic] a route on another occasion."  (R.R. at 497a.)  The Board further noted that the General Manager "admitted that if a driver refused to accept routes for two or three days in a row, the driver's contract would probably be terminated." (*Id.*)  Reasoning that the General Manager's statements corroborated Claimant's testimony that he was repeatedly threatened with termination when he wanted to take time off, the Board found that Claimant was not free from Liberty's direction and control.  With regard to whether Claimant was "customarily engaged" in an independently established trade, occupation, profession or business as required under Section 4(l)(2)(B) of the Law, the Board found that Claimant was not customarily engaged because he did not offer his driving services to any entity other than Liberty.  Because Claimant had legitimate

---

[4] The Board noted that Claimant was not free to change delivery times as reflected in the Referee's Finding of Fact No. 33, "as he was admonished by Liberty's [G]eneral [M]anager for doing so, even though he had obtained the prior consent of the Sears customer."  (R.R. at 497a.)

7

questions concerning his and his fellow drivers' status with Liberty as independent contractors and did not refuse to continue working under the terms of the Agreement, the Board concluded that Claimant did not violate any specific rule or standard of behavior and was not discharged due to willful misconduct. This appeal followed.

## II.

## A.

On appeal,[5] Liberty generally contends that the Board's determination that Claimant was not an independent contractor was not based on substantial evidence.

"Generally, there is a presumption in the Law that an individual receiving wages is an employee and not an independent contractor engaged in self-employment." *Pasour v. Unemployment Compensation Board of Review*, 54 A.3d 134, 137 (Pa. Cmwlth. 2012). However, an employer can overcome this presumption by establishing that the claimant was: (1) free from control and direction in the performance of his service; and (2) customarily engaged in an independent trade or business as to that service. *Id.* "Unless both of those showings are made, the presumption stands that one who performs services for wages is an employee."

---

[5] Our review is limited to determining whether the Board's findings of fact are supported by substantial evidence in the record, whether errors of law were committed, whether agency procedure was violated, or whether constitutional rights were violated. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1153 (Pa. 1993). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n.3 (Pa. Cmwlth. 2013).

*Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593, 596 (Pa. Cmwlth. 2012).

First, we must determine whether the claimant was free from control. In reviewing this question, we consider many factors, such as whether compensation was at a fixed rate and whether taxes were deducted; whether the putative employer supplied the tools necessary for the job; and the terms of the written contract between the parties. *Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 961 A.2d 261, 264 (Pa. Cmwlth. 2008). No single factor is controlling. *Id.*; *Venango Newspapers v. Unemployment Compensation Board of Review*, 631 A.2d 1384, 1387-88 (Pa. Cmwlth. 1993). Claimant's hours were established by Sears and Liberty had the authority to assign Claimant's manifests to another driver if he did not show up to the loading dock on time. Liberty also provided Claimant with training, during which time he was paid and monitored and supervised his work. Sears also set the rate of compensation which Claimant was not able to negotiate and required that Claimant wear a certain uniform. Thus, the Board and Referee did not err in determining that the first prong was not satisfied.

Because Claimant was not free from Liberty's control and direction, we next have to determine whether the Board erred in finding that Claimant was not customarily engaged in an independent trade or business. In making that determination, courts have generally considered: (1) whether the individual was capable of performing the activities in question to anyone who wished to avail himself/herself of the services and was not compelled to look to only a single employer for the continuation of such services; (2) whether the individual was

dependent on the presumed employer for employment; and (3) whether the individual was hired on a job-to-job basis and could refuse any assignment. *Osborne Associates, Inc. v. Unemployment Compensation Board of Review*, 3 A.3d 722, 728 (Pa. Cmwlth. 2010).

As to the second prong, although Claimant was free to refuse manifests, on certain occasions when he tried to refuse manifests, he was threatened by Liberty with termination or not being offered a route on a different occasion. Liberty's General Manager also acknowledged that if a driver refused work multiple days in a row, the driver would likely be terminated. Moreover, though Claimant could use his truck for his personal use or other business, Claimant only worked for Liberty, and as soon as he was terminated, he sold the truck. As such, the second prong is also not satisfied.

**B.**

Liberty then contends that even if Claimant is deemed to be an employee, his discharge resulted from his willful misconduct because he "declared himself as an employee, which is a direct violation of the Contractor Agreement" which states that "[t]he parties intend to create by this Agreement a relationship of Liberty and Independent Contractor and not that of the Employer and Employee." (Liberty's Brief at 50-51.)

10

The employer bears the burden of proving willful misconduct if the claimant has been discharged.[6] *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999) (citing *Sacks v. Unemployment Compensation Board of Review*, 459 A.2d 461 (Pa. Cmwlth. 1983)). In willful misconduct cases involving violation of a work rule, the employer bears the burden of proving the existence of a reasonable work rule and the fact that the claimant violated the work rule. *Guthrie*, 738 A.2d at 521; *Brunson v. Unemployment Compensation Board of Review*, 570 A.2d 1096, 1098 (Pa. Cmwlth. 1990). Once these elements have been established, the burden then shifts to the claimant to prove that he had good cause for his actions, meaning that his actions were justified or reasonable under the circumstances. *Guthrie*, 738 A.2d at 522 (citing *Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631, 634 (Pa. Cmwlth. 1976)).

Outside of Liberty's claim that Claimant "declared himself as an employee," (Liberty's Brief at 50), there is no evidence to show that this is the case.

---

[6] Although the Law does not define the term "willful misconduct," the courts have defined it as:

> (1) wanton or willful disregard for an employer's interests; (2) deliberate violation of an employer's rules; (3) a disregard for the standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). Where a claimant is discharged for a work rule violation, the employer has the burden to show that the claimant was aware that the work rule existed and that the claimant violated the rule. *Id.* The employer must also establish that the claimant's actions were intentional and deliberate, and the employee's actions must be considered in light of all the circumstances, including the reasons for his or her non-compliance with the employer's directives. *Id.*

Rather, while Claimant was questioning his work status with Liberty by talking to those at Liberty, other drivers and an attorney, he continued to accept Sears' manifests and continued his delivery services until Liberty discharged him. His conduct in questioning his employment status and attempting to figure out whether his status was appropriate by talking to others does not rise to the level of willful misconduct. Moreover, although the Agreement states that the parties' intention is to create an independent contractor relationship, Claimant's conduct did not violate that provision.[7]

Accordingly, we affirm the Board's determinations finding that Claimant is not ineligible for unemployment compensation benefits pursuant to Sections 402(h) and 402(e) of the Law, 43 P.S. §§ 802(h), 802(e).

_____
DAN PELLEGRINI, Senior Judge

---

[7] Liberty also argues various due process violations. Specifically, that a representative from the UC Tax Bureau attended the hearing and testified; that the Referee precluded expert testimony from two of Liberty's expert witnesses; and that a lack of pre-hearing discovery of facts constituted a deprivation of Liberty's due process rights. Before the Referee, Liberty failed to object to the representative's ability to testify or raise the issues of its witnesses not being able to testify and the lack of pre-hearing discovery. Review of an issue is waived by failing to raise it before the referee when there is an opportunity to do so. *Schaal v. Unemployment Compensation Board of Review*, 870 A.2d 952, 954-955 (Pa. Cmwlth. 2005).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liberty Transportation, Inc.,                :
                          Petitioner                :
                                     :
              v.                :  Nos. 391, 392, 393 C.D. 2016
                                     :
Unemployment Compensation             :
Board of Review,                :
                        Respondent             :

# **O R D E R**

AND NOW, this 22nd day of <u>December</u>, 2016, the orders of the Unemployment Compensation Board of Review dated February 12, 2016, at Nos. B-586414, B-586415 and B-586416, are affirmed.

_____
DAN PELLEGRINI, Senior Judge