530 A.2d 129

Commonwealth of Pennsylvania, Department of Labor and Industry, Office of Employment Security, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs January 23, 1987, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Debra L. Mazen,* Assistant Counsel, for petitioner.

*Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, August 12, 1987:

The Department of Labor and Industry's Office of Employment Security (OES) appeals an order of the Unemployment Compensation Board of Review (Board) granting benefits to Greg E. Schneider (Claimant).

Claimant was initially found financially ineligible for unemployment compensation benefits by the OES. Financial eligibility for unemployment compensation benefits is determined pursuant to a table set forth in Section 404(e)(1) of the Unemployment Compensation Law,[1] the relevant portions of which appear below:

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended* (Act), 43 P.S. §804(e)(1).

| Part A Highest Quarterly Wage | Part B Rate of Compensation | Part C Qualifying Wages | Part D Amount of Compensation | Part E |
|---|---|---|---|---|
| 4263—4287 | 173 | 6840 | 4498 | 2768 |
| 4288—4312 | 174 | 6880 | 4524 | 2784 |
| 4313—4337 | 175 | 6920 | 4550 | 2800 |
| 4338—4362 | 176 | 6960 | 4576 | 2816 |

In order to determine financial eligibility, a claimant must determine his highest quarterly wage, under Part A of the table, earned during the relevant base year.[2] The highest quarterly wage then determines the corresponding weekly benefit rate in Part B of the table, section 404(a)(1) of the Act, 43 P.S. §804(a)(1), and total amount of compensation in Parts D and E.[3] To be eligible for benefits, however, a claimant must have earned base year wages "equal to or in excess of" the amount of qualifying wages set forth in Part C of the table which corresponds to the weekly benefit rate. Section 404(c) of the Act. The table is designed to require that a claimant earn a certain percentage of wages outside the highest

---

[2] "Base year" is defined as the first four of the last five completed calendar quarters immediately preceding the first day of an individual's "benefit year" which begins the day on which a valid application is filed. Sections 4(a) and (b) of the Act, 43 P.S. §753(a) and (b). Claimant's base year was the fourth quarter of 1983 and the first three quarters of 1984.

[3] The amount of compensation payable is dependent upon the number of "credit weeks" worked during the base year. A claimant who worked eighteen (18) or more "credit weeks" during the base year is entitled to the amount of compensation in Part D which corresponds to his weekly benefit rate. A claimant who worked sixteen (16) or seventeen (17) "credit weeks" is entitled to the compensation set forth in Part E. Section 404(c) of the Act. 43 P.S. §804(c). A "credit week" is defined as any calendar week in a claimant's base year for which he was paid remuneration of not less than $50.00. Section 4(g.1) of the Act, 43 P.S. §753(g.1).

quarter, therefore, indicating a genuine attachment to the labor force. *Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 466 A.2d 107 (1983).

Claimant submitted employer quarterly wage reports which indicated his base year wages were $6,839.96 and his high quarter earnings were $4,340.78. Therefore, pursuant to Claimant's highest quarterly wage, he would be entitled to a weekly benefit rate of $176.00 if he had qualifying wages equal to or in excess of $6,960.00. Since Claimant needed qualifying wages of $6,960.00, he obviously did not qualify for benefits under section 404(a)(1) of the Act. However, section 404(a)(3), 43 P.S. §804(a)(3), allows a claimant who has insufficient qualifying wages at the applicable weekly benefit rate to "step-down" to the three (3) lower weekly benefit rates, provided he has base year wages equal to or in excess of qualifying wages corresponding to any one of these lower weekly benefit rates. A claimant who does have sufficient qualifying wages under this provision is eligible for benefits at the corresponding lower weekly benefit rate.

In the instant case, even under the "step-down" provisions, Claimant's base year wages of $6,839.96 fell short of the lowest qualifying wage of $6,840.00, by $.04. Although the OES determined Claimant ineligible for benefits for this reason, the referee reversed, holding that the base year wages should be rounded to the "next highest dollar." Therefore, Claimant's base year wages were determined to be $6,840.00, qualifying him for a weekly benefit rate of $173.00 under the "step-down" provision of section 404(a)(3) and the Board affirmed.[4]

---

[4] One of the three Board members did not concur in the Board's decision to affirm.

On appeal, the OES contends that the Board had no authority to round off Claimant's base year wages to the next highest dollar and, thus, erred by doing so. We agree.

In section 404 of the Act, 43 P.S. §804, the Legislature specifically provided that certain amounts are to be rounded off in determining eligibility and the rate and amount of compensation. For instance, section 404(b), 43 P.S. §804(b), provides that "[t]he 'highest quarterly wages' of an employee shall be the total wages *(computed to the nearest dollar)* which were paid to such employe in that calendar quarter in which such total wages were highest during the base year." (Emphasis added.) The statute also provides that a claimant's weekly compensation amount "if not a multiple of one dollar ($1), shall be computed to the *next lower multiple of one dollar ($1)*." Section 404(d) of the Act, 43 P.S. §804(d) (emphasis added).[5] Further, the statute requires that the table be adjusted annually according to the average weekly wage. If, under these adjustments, "the maximum weekly benefit rate is not a multiple of one dollar ($1), it shall be *rounded to the next higher multiple of one dollar ($1)*." Section 404(e)(2) of the Act, 43 P.S. §804(e)(2) (emphasis added). This section further provides that for purposes of determining the maximum weekly benefit rate the average weekly wage is to be "rounded to the nearest cent."

Although section 404 of the Act, specifically mandates rounding off for various purposes, there is no statutory language authorizing such a practice with regard to determining qualifying wages. To the con-

---

[5] This same "rounding off" language applies to the weekly benefit rate as reduced in section 404(e)(4) of the Act, 43 P.S. §804(e)(4), pursuant to the shortfall provisions in section 314(c)-(1)(iii) of the Act, 43 P.S. §794(c)(1)(iii).

trary, section 404(c) of the Act provides that in order to be eligible for benefits, a claimant must have

> base year wages in an amount *equal to, or in excess of,* the amount of qualifying wages appearing in Part C of the table specified for the Determination of Rate and Amount of Benefits on the line on which in Part B there appears his weekly benefit rate, as determined under subsection (a) of this section. (Emphasis added.)

Subsection (a) includes the "step down" provision which would make Claimant eligible for benefits with qualifying wages of $6,840.00. Therefore, the clear wording of the statute compels a reversal of the Board as Claimant's qualifying (*i.e.,* base year) wages were not "equal to or in excess of" $6,840.00.

Claimant's highest quarterly wage of $4,340.78 would be $4,341.00 pursuant to section 404(b) of the Act, which requires the highest quarterly wage be "computed to the nearest dollar." The Board contends that the rounded-off figure of $4,341.00, rather than the actual wages earned in that quarter of $4,340.78, should be used in calculating the qualifying wage. If this were the case, Claimant would be eligible for benefits, as his base year wages would be $6,840.18. The statute provides that the highest quarterly wage is to be "computed to the nearest dollar" solely for purposes of determining the *weekly benefit rate* in Part B of the table. Sections 404(a)(1) and (b) of the Act. There is nothing in the Act which requires that the highest quarterly wage be computed to the nearest dollar for purposes of determining base year wages. Since the Legislature specifically provided for rounding off for various purposes in section 404 of the Act, it could easily have done so with regard to base year wages. It has not done so, and we refuse to read such a provision into the Act.

Although we recognize the remedial purposes of the Act and have great sympathy for a claimant who misses

eligibility by such a close margin, the clear wording of the statute prohibits the Board from rounding a claimant's base year wages to the next highest dollar. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Briglia v. Unemployment Compensation Board of Review,* 70 Pa. Commonwealth Ct. 159, 452 A.2d 900 (1982), citing section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(b).

We have previously refused to find eligibility where claimants missed the qualifying wage requirement by $2.00, *Grossinger v. Unemployment Compensation Board of Review,* 86 Pa. Commonwealth Ct. 241, 485 A.2d 80 (1984), and where a claimant misses eligibility by two (2) credit weeks. In *Grossinger,* we recognized the Commonwealth's interest in preserving the financial integrity of the fund and ensuring the adequate distribution of its limited resources.

In order to be eligible under the Act, a claimant must demonstrate a genuine attachment to the labor force. *Martin.* The table in section 404(e) of the Act ensures that this will be the case by requiring base year wages *equal to or in excess of* the appropriate qualifying wage amount in Part C. In recognition of the Act's remedial purposes, the "step-down" provision of section 404(a)(3)[6] is an obvious attempt on the part of the Legislature to broaden eligibility to include many claimants who have not been in the work force as long as those found eligible under section 404(a)(1). However, in order to effectuate its purpose behind the eligibility requirements, the Legislature required a claimant's earnings to equal or exceed the appropriate qualifying wage

---

[6] The 1980 amendments to the Act reduced the weekly benefit rates which a claimant could step down to from 4 to 3. Act of July 10, 1980, P.L. 521, No. 108, §15. The effect of the amendments to section 404 were to restrict eligibility.

under the step-down provision. If we permit a claimant's base year wages to be rounded up in the absence of statutory authority, we allow for the potential situtation where ever smaller amounts of wages will qualify a claimant for benefits. Clearly, the Legislature did not intend such a result but meant, instead, that the qualifying wage amounts were to be absolute thresholds.

Any practice by the unemployment compensation authorities to round a claimant's base year wages to the next highest dollar could, in the aggregate, have a significant effect on the unemployment compensation fund. The validity of any such practice must be subjected to the legislative process with its accompanying debates.

As our Supreme Court has said, the Act is a piece of "complex economic-social welfare legislation which must ultimately reflect a balance between legislative efforts to eliminate an evil, *e.g.,* the debilitating effects of unemployment, administrative realities and the problem of allocating scarce financial resources in a complex society. The resolution of such conflicting interests is peculiarly adapted to the legislative process." *Martin,* at 305, 466 A.2d at 119. Here, the clear wording of the statute compels us to reach what is an apparently harsh result. Accordingly, we must reverse the Board's order.

## ORDER

AND NOW, this 12th day of August, 1987, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed.

---

DISSENTING OPINION BY JUDGE PALLADINO:

I respectfully dissent.

There are times when Appellate Courts must recognize the absurdity of a result occasioned by strict adherence to the words of a statute. This is such a time.

The sum of four cents ($.04), a de minimis amount by anyone's perception, does not justify the denial of benefits to a claimant otherwise eligible.