**ELECTROLUX CORPORATION,**
**Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF EMPLOYER TAX OPERATIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1997.
Decided Jan. 8, 1998.

---

Robert B. Cottington, Pittsburgh, for petitioner.

Jane C. Pomerantz, Deputy Chief Counsel, Harrisburg, for respondent.

Before KELLEY and FLAHERTY, JJ., and NARICK, Senior Judge.

FLAHERTY, Judge.

Electrolux Corp. (Electrolux) petitions for review of an action by the Department of Labor and Industry, Bureau of Employer Tax Operations (Department) which denied Electrolux's petition for reassessment of unemployment compensation taxes assessed by the Department for Electrolux's sales representatives during the period from 1990 through the first two quarters of 1994. The

dispute concerns whether Electrolux's sales representatives are employees and, therefore, subject to unemployment compensation taxes or, independent contractors and, thus not so subject. The Department, finding that the sales representatives constituted employees, assessed taxes against Electrolux. For the reasons which follow, we affirm the Department.

Electrolux is a corporation whose business is the manufacture and sale of vacuum cleaners and related accessories. Sales representatives perform the service of direct sale of the products. They sign a sales representative agreement with Electrolux which provides that they are independent agents and not employees of Electrolux. The agreement further provides that the sales representatives may not "directly or indirectly promote, represent, distribute, sell or purchase for resale any products which compete with" Electrolux products. The sales representatives are loaned products on consignment to be used for demonstration and are responsible for any loss or damage thereto.

Sales representatives have no assigned territory, no set hours of work and are free to devote as much or as little time as they choose to selling the product. They are free to obligate themselves by hiring assistants, helpers, telemarketers and subcontractors. Sales representatives perform all services away from Electrolux's premises. In addition, Electrolux provides no training for its sales representatives nor is any required. However, Electrolux does make available training literature and videos. Sales representatives are required to purchase a "success kit" for $99.00.

Sales representatives are free to employ whatever sales methods they choose. They have no sales quotas to meet and no minimum number of sales calls to make. They are not required by Electrolux to attend any meetings or to submit any sales reports to Electrolux. Electrolux does not monitor or supervise sales representatives. Sales representatives are responsible for all expenses incurred, i.e., transportation, insurance, telemarketing, advertising, promotional, etc.

When sales representatives do make a sale, they are required to submit the sales contracts to Electrolux, which reviews all such contracts for accuracy and completeness but neither approves nor denies completed sales agreements. Sales representatives may, at their discretion, offer a trade-in allowance to prospective customers within guidelines established by Electrolux. They are permitted to sell products that do not compete with Electrolux products such as Mary Kay, Amway, HerbalLife and other direct sales products. At least some sales representatives actually do engage in such other sales. Sales representatives are solely compensated by way of commission on sales actually made without a draw, override or guarantee against the commissions. They receive no fringe benefits. The sales representatives are responsible for payment of any state, federal or local taxes due on the commissions they receive.

Appellate review over an agency adjudication is limited to determining whether the agency action is in violation of the constitutional rights of the appellant, or is not in accordance with law or that the provisions of 2 Pa.C.S. §§ 501—508 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. 2 Pa.C.S. § 704. *See also Slawek v. Board of Medical Education and Licensure*, 526 Pa. 316, 586 A.2d 362 (1991).

█ The first issue raised by Electrolux is: did the Department err in finding that the sales representatives were Electrolux employees and that the services they performed were not excluded from the definition of employment pursuant to Section (4)(*l*)(2)(B) of the Unemployment Compensation Law (the statute), 43 P.S. § 753(*l*)(2)(B) [1]? Under the statute, a person receiving remuneration for services rendered is presumed to be employed and therefore to have "employment" within the meaning of the statute which in turn renders

---

1. Act of December 5, 1936, Second Ex., Sess., P.L (1937) 2897, *as amended*, 43 P.S. §§ 751— 914.

the employer liable for unemployment compensation taxes. The statute provides in relevant part that

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753 (*l*)(2)(B). The case law in Pennsylvania demonstrates that this two-pronged test is conjunctive and both prongs must be satisfied in order for persons rendering services for wages to be considered independent contractors. *Kardon v. Unemployment Compensation Board of Review,* 40 Pa.Cmwlth. 20, 396 A.2d 487 (1979). Given the statutory presumption that one who receives wages for services is employed and subject to the benefits of the unemployment compensation law, the party seeking to show that such a person is an independent contractor bears the burden of proving these two prongs are satisfied. *Urban Redevelopment Authority v. Unemployment Compensation Board of Review,* 142 Pa.Cmwlth. 20, 596 A.2d 1209, 1211 (1991).

 In examining the first prong, we inquire not only whether the presumed employer controlled the employee, but also whether the presumed employer had the right to control the employee, irrespective of whether this right was exercised. *Biter v. Department of Labor and Industry,* 39 Pa. Cmwlth. 391, 395 A.2d 669, 670 (1978). Regarding the relevant consideration under this first prong, this court has held that the

> following features have been identified as key factors in determining control or right to control in situations involving commission salesmen: (1) a definite assignment of territory; (2) a required number of interviews to be made within a prescribed time period; (3) mandatory attendance at sales meetings; and (4) regular filing of progress reports.

*Unemployment Compensation Board of Review v. Kessler,* 27 Pa.Cmwlth. 1, 365 A.2d

459, 461 (1976) (citation omitted). It is undisputed that all these "key factors" weigh in favor of a finding of no control in the case at hand. Even the Department in its final adjudication conceded that

> [t]he record does support findings that are used as indicators that individuals might be free from direction and control, such as the sales representatives here involved had no set assignment of territory, they were not required to conduct a certain number of interviews, they were not required to attend meetings or file periodic reports, they are free to set their own hours, they employ any sales method they may choose, they may hire assistants or helpers, they pay their own expenses and taxes.

Final Decision and Order (Final Decision) at p. 8. Notwithstanding these key factors which indicated a lack of control by Electrolux, the Department went on to conclude that Electrolux did in fact exercise control over the sales representatives so as to constitute them employees.

In support of its conclusion that Electrolux exercises control over the sales representatives, the Department in its Final Decision points to the clauses in the sales agreement between the sales representatives and Electrolux which provide that

> [t]he Representative shall not sell products to, nor shall sales, service or repair work be subcontracted for or with, or sales commissions shared with, or paid to, vacuum cleaner dealers, repair shops, or commercial entities marketing water purification units or related products.
>
> The Representative shall not directly or indirectly promote, represent, distribute, sell or purchase for resale any products that compete with the Products [of Electrolux].

(R.R. at 111a.) These clauses lead the Department to conclude that

> Electrolux controls what might be considered the key factor in a business, that is what this independent business owner sells. Under the Sales Representative Agreement, the individual can only sell Electrolux products.... A sales representative who is free from control and direction over the performance of such services would be allowed to demonstrate and

sell other vacuum cleaners in addition to Electrolux machines. Such is not the case here.

(Final Decision at p. 9.)

■ In essence, the Department in its Final Decision held that as a matter of law, the mere existence of the noncompete clause renders the party, which agrees to such clause an employee of the other party. Electrolux asserts that this is in error. Electrolux argues that

> [b]y relying solely on this noncompetition agreement and holding that an agreement not to compete automatically renders the direct sellers employees without regard for the great weight of evidence establishing independent contractor status under the traditional factors utilized by the Court, the Department misapplies the two prong test for independent contractor status under Section 4(*l*)(2)(B) of the Law.

(Electrolux's reply brief at 1.) We are constrained to agree.

The Department has committed error in holding essentially, as a matter of law, that the sales representatives' mere agreement not to sell products in competition with Electrolux products provides Electrolux with sufficient control over the sales representatives to thereby constitute them employees for purposes of the unemployment compensation statute. Rather than balancing the various factors, the Department has given inordinate legal weight, in fact, dispositive weight, to the fact of the noncompete agreement, apparently concluding that such outweighs all of the other factors which concededly weigh in favor of finding an absence of control. This was error. *See, e.g., Pavalonis v. Unemployment Compensation Board of Review*, 57 Pa.Cmwlth. 289, 426 A.2d 215, 217 (1981) ("While each of these [relevant] factors **would not be controlling individually**, viewed as a whole we believe that they were sufficient to support a conclusion claimant was not under the control of his alleged employer.") (emphasis added).[2] Viewing the

factors as a whole, we cannot conclude that the mere existence of the noncompete clause outweighs all the other factors that weigh in favor of a finding of no control.[3]

The second prong of the test is whether as to such services the individual renders, such individual is customarily engaged in an independently established trade, occupation, profession or business. As to this prong, the courts have considered two factors to be important: (1) whether the individual was capable of performing the activities in question to anyone who wished to avail themselves of the services; and (2) whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services. *Venango Newspapers v. Unemployment Compensation Board of Review*, 158 Pa.Cmwlth. 379, 631 A.2d 1384, 1388 (1993) (citation omitted).

In performing the analysis under this second prong, the Department in its Final Decision held that because the sales representatives are prohibited from selling products which compete with Electrolux, they are therefore dependent upon Electrolux for their continued employment as vacuum cleaner sales representatives and as such, not engaged in an independent trade. (Final Decision at pp. 10–11.) In other words, they are compelled to look only to Electrolux for the continuation of their services as vacuum cleaner sales persons.

■ Electrolux argues that the Department erred in its adjudication. Electrolux points to the fact that the sales representatives are in business for themselves and are free to sell, and in fact, some do sell for various entities other than Electrolux, e.g., Mary Kay, Amway, Fuller Brush and HerbalLife. According to Electrolux, the fact that the sales representatives are seen by their customers as door to door sales persons of various goods and not just as Electrolux sales persons, proves that these sales representatives are in the independent trade or business of in-home selling.

---

2. To the extent that the Final Decision rests on both the noncompete clause and the prohibition against selling to retailers, we still find this to be insufficient to outweigh the other factors.

3. *Cf. Krum v. Unemployment Compensation Board Of Review*, 689 A.2d 330 (Pa.Cmwlth.1997)

(an attorney working for a temporary legal agency was an independent contractor notwithstanding that he was not free to take on any clients if to do so would interfere with the agency collecting its fee).

Relying upon the statutory language, the Department in its Final Decision rejected this line of reasoning when it asserted that

[t]he particular activity in question here, however, is the sale of vacuum cleaners and related accessories. The sales representatives here working under agreement with Electrolux Corporation are specifically prohibited form selling vacuum cleaners for anyone else.

The second prong of the test specifically says "as to *such services.*" Such services in this case refers [sic] to direct selling of vacuum cleaners not just direct selling.

(Final Decision at p. 11.) Electrolux disputes the Department's characterization of the sales representatives' business as "vacuum cleaner sales", rather, Electrolux characterizes their business as being simply "direct sales" arguing that there is nothing justifying the Department's narrow construction. To the contrary, the statutory language to which the Department in its Final Decision points, *i.e.,* "as to **such** services" (emphasis added), justifies the Department's narrow construction. Reading the statutory phrase, "as to such services" in context, it is clear to this court that the legislature was referring to the services which are performed by the individual for remuneration and concerning the performance of which, the individual is free from control. In this case, those services are the selling of Electrolux products.

 Moreover, Electrolux's suggestion that we analyze the provision of these services from the perspective of the customer to whom the sales representatives are selling is without justification in the statutory language or in the case law. The pertinent inquiry is not how do the customers perceive the services that the sales representatives are rendering, but rather, for whom are the selling services rendered and are the sales representatives compelled to look only to Electrolux for the continuation of the service of selling vacuum cleaners. The answer to these questions is that: (1) the services of selling Electrolux products is being rendered for Electrolux; and (2) the sales representatives are compelled by their contract to look only to Electrolux for the continuation of the service of selling vacuum cleaners. Accordingly, Electrolux has failed to carry its burden of proving the second prong of the statutory test. Therefore, the sales representatives are employees for the purpose of the Unemployment Compensation Law.

This conclusion is bolstered when we consider that the first factor in *Venango Newspapers* requires this court to inquire if the sales representatives are free to perform their activities, namely, the selling of vacuum cleaners, to anyone who wished to avail themselves of the services. The sales representatives are not so free. Accordingly, under both of the *Venango Newspapers* factors, the sales representatives cannot be considered to be in an independently established trade, occupation, profession or business within the meaning of the Unemployment Compensation statute.[4]

The second major issue which Electrolux presents is that the Department's class wide reassessment of more than 400 individual sales representatives violated the Equal Protection and Due Process clauses of the United States and Pennsylvania Constitutions as well as the statute.[5] While Electrolux as-

4. Electrolux also notes that the General Assembly recently amended the Unemployment Compensation Law to specifically exempt "direct sellers" such as those at issue herein from the definition of "employment." *See* Act of October 30, 1996, P.L. 738, No. 133, § 1 amending the Unemployment Compensation Law. Electrolux suggests that this is evidence of legislative intent that the sales representatives here are not to be included in the definition of employment under the pre-amended version. We note that the amendment was not given retroactive effect. In addition, the fact that the legislature amended the statute may as easily serve as evidence that prior to such amendment, direct sellers were to be included in the definition of employment.

The result in this case comports with the pre-amended statutory language and with the case law construing that language.

5. First, we note that Electrolux does not and cannot assert that the Pennsylvania Constitution provides broader protection than the Federal Constitution under either an equal protection or due process analysis. *Commonwealth v. Parker White Metal Co.,* 512 Pa. 74, 83, 515 A.2d 1358, 1362 (1986) (standards and analysis of equal protection claim is same under the Federal Constitution as it is under the State Constitution.); *Pennsylvania Game Comm'n v. Marich,* 542 Pa. 226, 666 A.2d 253 (1995) (same analysis of due process under the Federal Constitution is applicable under the State Constitution).

serts that the Department's assessment violates both equal protection and due process notions as well as the Unemployment Compensation Law, Electrolux only presents argument with respect to the due process claim. Accordingly, we will address only the due process claim.

■ There is both a procedural and substantive aspect to due process. *See, e.g., Department of Transportation v. Clayton,* 546 Pa. 342, 684 A.2d 1060 (1996). However, it appears that Electrolux has confined itself to a claim that the Department's assessment here violated its procedural due process rights. *See* Electrolux's Brief at p. 37. Procedural due process merely requires adequate notice and an opportunity to be heard. *Commonwealth v. Thompson,* 444 Pa. 312, 281 A.2d 856 (1971).

■ Electrolux's complaint, is that the reassessment involved over 400 sales representatives and that the nature of the inquiry regarding the second prong of the statutory test, *i.e.,* whether the individual is customarily engaged in an independently established trade, etc., requires an individualized assessment, rather than a class-wide assessment. This court, however, is not convinced that the nature of the inquiry for the second prong requires an individualized assessment. Our earlier analysis of this prong rested upon the inquiry of whether the sales representatives were both free to perform their vacuum sweeper sales activities for any manufacturer/seller who wished to avail themselves of the services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services. Because this analysis rested upon the contractual relationship between the sales representatives and Electrolux and there is no allegation that the sales agreements differed among the sales representatives, no individualized assessment was required. Accordingly, no individualized assessment was required as a matter of resolving this question under the statute.

■ Even if an individualized assessment were otherwise required, procedural due process only requires notice and an opportunity to be heard. Electrolux does not deny that at the hearing on its petition for reassessment, it was completely free to present evidence of any individual cases it deemed to merit exclusion from the assessment of unemployment compensation taxes. As it was afforded notice of the assessment and an opportunity to be heard concerning why the assessment was in error either in toto or in any particular case, Electrolux was not denied procedural due process.

Accordingly, because the Department's adjudication did not violate Electrolux's constitutional rights or commit an error of law, the Department's order is affirmed.

### ORDER

NOW, January 8, 1998, the order of the Pennsylvania Department of Labor and Industry, Bureau of Employer Tax Operations at Docket No. 94–R–0120–1, dated November 19, 1996 is affirmed.

LEADBETTTER, J., did not participate in the decision in this case.