IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mirsada Begovic, :
               Petitioner :
  :   No.  682 C.D. 2019
          v. :
  :   Submitted:  December 20, 2019
Unemployment Compensation :
Board of Review, :
               Respondent :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE McCULLOUGH                        FILED:  June 23, 2020

Mirsada Begovic (Claimant), representing herself, petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board), reversing the referee's determination of Claimant's financial eligibility for unemployment compensation (UC) benefits under section 404 of the Unemployment Compensation Law (Law).[1]  The Board concluded that wages Claimant earned as a canvasser for OpenPittsburgh.org (Open Pittsburgh), and as an interpreter for Steel City Interpreters, Ltd. (Steel City Interpreters), did not count towards her financial eligibility

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §804. Section 404 of the Law provides that in order to financially qualify for UC benefits, an employee must have sufficient high quarter and total qualifying base year wages in covered employment, as set forth in a table titled "Rate and Amount of Benefits."

under section 404 of the Law, 43 P.S. §804, because they were not earned in employment.[2] After review, we reverse.

## Facts and Procedural History

Claimant filed an application for UC benefits with an effective date of February 25, 2018, which established a base year consisting of the 4th Quarter of 2016 and the 1st, 2nd, and 3rd Quarters of 2017.[3] (Certified Record (C.R.) at Item No. 1.) Claimant reported earnings from multiple establishments during the base year, including Conservation Consultants, Inc. (CCI); Optimal Phone Interpreters/Stratus Audio, Inc. (Optimal); Your Own Home d/b/a Comfort Keepers (Comfort Keepers); Steel City Interpreters; and Open Pittsburgh. The local service center found Claimant ineligible for benefits pursuant to section 404 of the Law, 43 P.S. §804, because she did not meet the minimum amount of wages in a base-year period necessary to qualify for benefits. In determining her financial eligibility, the local service center excluded wages she earned from CCI, Optimal, Comfort Keepers, Open Pittsburgh and Steel City Interpreters on the ground that Claimant's services did not constitute covered employment. The local service center concluded that Claimant's highest quarter was the 4th Quarter of 2016, when she was paid wages in the amount of $3,307, and her total qualifying base-year wages were $5,232. *Id.* According to the table set forth in

---

[2] Section 4(x) of the Law defines "wages" to generally mean all remuneration "paid by an employer" to an individual with respect to her employment. 43 P.S. §753(x).

[3] The local service center made no determination as to the circumstances surrounding Claimant's separation from employment, and this was not an issue developed before the referee. Rather, the only issue before the referee and the Board was Claimant's financial eligibility for UC benefits. This analysis was limited to determining whether the services that Claimant provided for various putative employers constituted "employment" pursuant to section 4(*l*)(2)(B) of the Law, 43 P.S. §753(*l*)(2)(B).

2

section 404(e)(1) of the Law, 43 P.S. §804(e)(1), a claimant with "high quarterly wages" of $3,307 is financially eligible for benefits at a rate of $131 per week provided she had base-year wages of at least $5,258. Claimant's total base-year earnings, after the earnings from CCI, Optimal, Comfort Keepers, Open Pittsburgh and Steel City Interpreters were deducted, were only $5,232. Therefore, Claimant did not meet the test of financial eligibility under section 404 of the Law, 43 P.S. §804.

Claimant appealed to the referee. (C.R. at Item No. 11.) At issue was whether Claimant's wages earned while performing services for Steel City Interpreters and Open Pittsburgh and the three other putative employers[4] should be included in calculating her base-year wages and determining her financial eligibility. *Id.*

The referee held an evidentiary hearing on August 1, 2018, at which Claimant, her counsel, and a witness from Open Pittsburgh appeared. David Tessitor, the Chairman of Open Pittsburgh testified that the organization is a political action committee. (Notes of Testimony (N.T.) 8/1/18 at 69, C.R. at Item No. 15.) He denied that Claimant was an employee. He explained that the arrangement in the industry has always been on the basis of "subcontracting." (N.T. at 66-67.) He explained that the canvassers can work whenever they desire. (N.T. at 66.) He testified that in 2016, Claimant was hired for three days to collect signatures for an Open Government amendment to the Pittsburgh City Charter and for which she was paid $2 per signature. *Id.* Mr. Tessitor testified that he brought in several dozen professional canvassers from out of state to help the local canvassers, including Claimant, to collect 8,000 signatures in three days. (N.T. at 67.) Mr. Tessitor testified that Open Pittsburgh terminated the project early when it found out that it was not going to be able to acquire the necessary signatures that were needed. (N.T. at 68.) Mr. Tessitor testified that in 2017, Claimant

---

[4] The Board ultimately concluded that Claimant's wages from these employers <u>were</u> covered wages for purposes of calculating Claimant's financial eligibility.

3

was hired again as a canvasser to obtain signatures on two petitions for which she was paid $3 per signature. *Id.* He testified that Claimant was permitted to hire subcontractors, such as children or friends, to help her collect signatures, and pay them from the wages she received from Open Pittsburgh. (N.T. at 69.)

Claimant testified that when she was first hired by Open Pittsburgh, she had no experience as a canvasser or collector of signatures. (N.T. at 40.) She testified that she "started with Open Pittsburgh" and before Open Pittsburgh, she "did not have experience as either canvasser or petitioner, collector of signatures" and that she "was not trained in anything professionally." *Id.* She testified that she was hired by Open Pittsburgh after she called Mr. Tessitor and told him that she could canvass for Open Pittsburgh because she "politically [] agree[d] with the agenda and would like to help." (N.T. at 38.) She agreed that she was able to determine when and where in the City of Pittsburgh she would canvass. (N.T. at 47-48.) Claimant testified that she was able to work with other canvassers or on her own and did not have any particular territory in which to canvass or other restrictions concerning where she could canvass for signatures. (N.T. at 47, 71.) When asked what training she received, Claimant testified:

> It was like basically going through the agenda and how to approach the people, what is the best energy, or how you said hi, introduce myself, this is for open government and so, and very quickly introduce what is the topic and then ask for signature. And then I tested the (inaudible) and then let's go and try to find somebody. So listening [a] couple [of] times and you are not new, you can go on your own. So that was basically training.

(N.T. at 51.)

4

Claimant was given documentation with canvassing tips and talking points, flyers with information on the ballot initiative to hand out to people, and an electronic tablet in order to verify signatures. (N.T. at 40, 70.) Claimant was issued an IRS Tax Form 1099 for the work she performed for Open Pittsburgh and Open Pittsburgh did not withhold taxes from Claimant's pay check. (N.T. at 39, 52.)

No witness appeared on behalf of Steel City Interpreters. Claimant testified that she is fluent in Bosnian, Serbian and Croatian. (N.T. at 52.) She explained that Steel City Interpreters provides in-person interpreter services for healthcare organizations such as the University of Pittsburgh Medical Center, and Allegheny Health Network. *Id.* She explained whenever Steel City Interpreters had an assignment that required her particular language expertise, a scheduler would call her and ask her if she was available. *Id.* She admitted that she was free to refuse an assignment and was not required to answer Steel City Interpreters' call. *Id.* However, she testified that she never turned one down because the assignments were "so rare." *Id.* She only received three assignments from Steel City Interpreters during the relevant time period. *Id.* at 53. She was paid $40 an hour, with a minimum of two hours of pay guaranteed; that was not negotiable. *Id.* at 52. She received no training with respect to the language aspect, but did receive training on how to introduce herself and close the call. *Id.* Claimant testified that she did not advertise her services on the internet or elsewhere and she did not have any business cards or a business in interpretation. *Id.* at 63. She explained that she found this job and applied because the company was in the business of providing interpreters. *Id.*

Following the hearing, the referee determined that "[w]hile [Claimant] frequently obtained work as an independent contractor for various entities, there is no evidence of record to demonstrate intent on the part of [Claimant] to be a self-employed

business person." (Referee decision at 5.) The referee concluded that Open Pittsburgh and Steel City Interpreters failed to demonstrate that Claimant was "customarily engaged in an independently established trade, occupation, profession or business." *Id.* The referee concluded that, therefore, the remuneration Claimant received from these entities was performed in covered employment and should count towards her financial eligibility. *Id.* Pursuant to Section 404(e) of the Law, 43 P.S. §804(e), the referee found Claimant eligible for a weekly benefit rate of $292. Open Pittsburgh and Steel City Interpreters appealed to the Board. On April 2, 2019, the Board issued its decision and order.

Steel City Interpreters

With respect to Steel City Interpreters, the Board made the following findings of fact:

> 14. During the 1st and 2nd Quarters of 2017, [Claimant] provided face-to-face interpretation services for [Steel City Interpreters] and was paid $40.00 per hour with a minimum of two hours per assignment and could potentially obtain some travel reimbursement for assignments requiring a one hour commute from the zip code 15233.
>
> 15. [Claimant] provided interpretation services to healthcare organizations when performing services through Steel City [Interpreters].
>
> 16. [Claimant] could accept or reject interpretation assignments offered through Steel City [Interpreters].
>
> 17. [Claimant] was issued a Form 1099 for her work for Steel City [Interpreters] and Steel City [Interpreters] did not withhold taxes from [Claimant's] pay.

(Board decision at 2; Findings of Fact (F.F.) Nos. 14-17.)

6

Based on these findings, the Board determined that:

> [Claimant] was paid $40.00 an hour, with a minimum of two hours of pay guaranteed. This weighs towards [Claimant] being an employee. However, other than that factor, the rest of the factors weigh in favor of [Claimant] being free from direction and control. [Claimant] had the right to refuse assignments, was issued a Form 1099 for her services and no taxes were withheld from her paychecks, was not provided on-the-job training, was not given tools or equipment to perform her services, was not subject to monitoring by Steel City [Interpreters], and Steel City [Interpreters] did not review [Claimant's] performance. Thus, the Board concludes that [Claimant] was free from direction and control and the first prong is met.
>
> [Claimant] was hired on a job-to-job basis and could refuse any assignment. This weighs toward her being an independent contractor. She was able to work for more than one entity, which weighs toward independent contractor status. Because she could work for more than one entity for work, she did not depend on the existence of Steel City [Interpreters] for ongoing work. These factors all weigh towards [Claimant] being customarily engaged in an independently established trade, occupation, profession, or business. Therefore, the Board concludes that both prongs have been met and the services [Claimant] performed through Steel City [Interpreters] were done as self-employment.

(Board decision at 6.)

The Board concluded that "both prongs [were] met and the services [Claimant] performed through Steel City [Interpreters] were done as self-employment. Thus, the earnings she received from her work with Steel City [Interpreters] will not be counted towards her financial eligibility." *Id.*

With respect to Open Pittsburgh, the Board made the following findings of fact:

18.  During her base year, [Claimant] also provided services to Open Pittsburgh as a canvasser collecting signatures for ballot initiatives and was paid $3.00 per verified signature.

19. [Claimant] was able to work with other canvassers or on her own and did not have a set territory to canvass or other restrictions on where she could canvass for signatures.

20. [Claimant] was given a document with canvassing tips and talking points on it, flyers with information on the ballot initiative to hand out to people, and was also given an electronic tablet by Open Pittsburgh in order to verify signatures.

21. [Claimant] was issued a Form 1099 for the work she performed with Open Pittsburgh and Open Pittsburgh did not withhold taxes from [Claimant's] pay.

(Board decision at 2-3; F.F. Nos. 18-21.)

Based on these findings, the Board determined that:

Claimant was free to canvass for signatures anywhere she chose, either by herself or with others, and Open Pittsburgh only cared about the end result, i.e., [Claimant] getting as many signatures as possible.  If [Claimant] did not feel like working on a particular day, she did not have to and the only repercussion was not getting paid for the signatures she could have collected that day.  Thus, the Board concludes that [Claimant] was free from the direction and control of Open Pittsburgh.

. . . [Claimant] could work for others while providing services for Open Pittsburgh, therefore, she was not dependent on the existence of Open Pittsburgh for ongoing

8

work. This factor weighs in favor of [Claimant] being an independent contractor. [Claimant] was hired each time for one project with one goal – collect as many signatures as she could before the ballot initiative. She had the right to not work on any particular day with the only repercussion being she would not get as much money as she would have had she canvasses (sic) for signatures. This too weighs in favor of her being an independent contractor. As to her right to refuse assignments, again, [Claimant] was hired for one project so this factor is neutral. Therefore, the Board concludes that [Claimant] was customarily engaged in an independently established trade, occupation, profession or business.

(Board decision at 5.)

The Board concluded that: "[b]ecause both prongs [were] met[, Claimant] was an independent contractor when working through Open Pittsburgh and her earnings from Open Pittsburgh will not count towards her financial eligibility." *Id.* The Board vacated the referee's determination and directed the local service center to disqualify wages earned from Steel City Interpreters and Open Pittsburgh for purposes of calculating Claimant's financial eligibility.[5]

---

[5] On June 12, 2019, this Court ordered the parties to address the appealability of the Board's order under the Pennsylvania Rule of Appellate Procedure 311(f) which provides: "[a]n appeal may be taken as of right from (1) an order of a . . . government unit remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion. . . ." Pa.R.A.P. 311(f). "[I]f a local agency must engage in fact-finding to determine an award calculation, administrative discretion is involved, the order is not final and, thus, the appellate court must quash the appeal. *P.R. Hoffman Materials v. Workers' Compensation Appeal Board (Zeigler)*, 694 A.2d 358 (Pa. Cmwlth. 1997). However, an order is appealable under Pa.R.A.P. 311(f) if it merely calls for a calculation based upon record evidence. *Williams v. Workers' Compensation Appeal Board (Center City Construction Co.)*, 781 A.2d 251, 252 (Pa. Cmwlth. 2001).

Claimant's appeal from the Board's order is appealable pursuant to Pa.R.A.P. 311(f). The Board concluded that Claimant's earnings from CCI and Optimal should be included in calculating Claimant's financial eligibility and that wages earned from Open Pittsburgh and Steel City Interpreters should not be included. The Board remanded the matter to the local service center to issue a new financial decision consistent with the Board's decision. Such action on the part of the

9

Claimant petitions this Court for review of the Board's order.[6]

## Discussion

Under section 401(a) of the Law, 43 P.S. §801(a), a claimant is financially eligible for UC benefits if she has been paid wages *for employment* as required by Section 404(c) of the Law, 43 P.S. §804(c), and has earned at least 37% of her base-year wages in one or more quarters other than the highest quarter in her base year.[7]  43

---

local service center does not require the exercise of discretion.  The record already contains wage information for these entities.  The local service center merely needs to recalculate Claimant's financial eligibility and issue a new notice of financial determination.  Because the local service center will merely be performing a calculation, and exercising no discretion, the Board's order is appealable under Pa.R.A.P. 311(f).

[6] Our review of the Board's order "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated."  *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).  In unemployment compensation proceedings, the Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence.  *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422 (Pa. 2003).  In making a substantial evidence determination, this Court must view the record in a light most favorable to the party that prevailed before the Board by allowing that party the benefit of all reasonable inferences that may be drawn from the evidence.  *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106 (Pa. Cmwlth. 1994).

[7] To be financially eligible for benefits during a benefit year, a claimant must have sufficient wages in covered employment during the "base year" (the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year).  *See* section 4(a), (b) of the Law, 43 P.S. §753(a), (b).  Financial eligibility is determined pursuant to a table set forth in section 404(e)(1) of the Law, 43 P.S. §804(e)(1).  *Department of Labor & Industry, Office of Employment Security v. Unemployment Compensation Board of Review*, 530 A.2d 129 (Pa. Cmwlth. 1987).  Using the table set forth in section 404(e)(1), a claimant must first determine her highest quarterly wage earned during her base year.  The highest quarterly wage determines the corresponding weekly benefit rate and total amount of compensation.  *Id.*  To be eligible for benefits, however, a claimant must have earned base-year wages equal to or in excess of the amount of qualifying wages that corresponds to the weekly benefit rate set forth in the table.  *See Dorn v. Unemployment Compensation Board of Review*, 866 A.2d 497, 501 (Pa. Cmwlth. 2005).  The table is designed to require that a claimant earn a certain percentage of wages outside the highest quarter, therefore, indicating a "genuine attachment to the labor force." *Department of Labor & Industry, Office of Employment Security*, 530 A.2d at 130.

P.S. §801(a) (emphasis added).  "Wages" are "all remuneration . . . paid by *an employer* to an individual with respect to [her] employment."  43 P.S. §753(x) (emphasis added). "Employment" is "all personal service performed for remuneration by an individual under any contract of hire."  43 P.S. §753(*l*)(1).

There are various exceptions to "employment."  Income generated from self-employment as an independent contractor is not "wages" for purposes of determining an individual's eligibility for unemployment compensation benefits.  *See Bruno v. Unemployment Compensation Board of Review*, 523 A.2d 843 (Pa. Cmwlth. 1987).  The independent contractor/self-employment exemption is set forth in section 4(*l*)(2)(B) of the Law, and provides, in pertinent part:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the [local service center] that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §753(*l*)(2)(B).

This provision presumes that an individual is an employee, as opposed to an independent contractor, but this presumption may be overcome if the putative employer sustains its burden of showing that the claimant was free from control and direction in the performance of her service and that, as to such service, was customarily engaged in an independent trade or business.  *Beacon Flag Car Co. (Doris Weyant) v. Unemployment Compensation Board of Review*, 910 A.2d 103, 107 (Pa. Cmwlth. 2006).  Unless both of these showings are made, the presumption stands that one who performs services for wages is an employee.  *York Newspaper Company v.*

*Unemployment Compensation Board of Review*, 635 A.2d 251 (Pa. Cmwlth. 1993), *appeal denied*, 647 A.2d 906 (Pa. 1994); *Electrolux Corporation v. Department of Labor & Industry*, *Bureau of Employment Tax Operations*, 705 A.2d 1357, 1360 (Pa. Cmwlth. 1998).

A. **Open Pittsburgh: First Prong of the Independent Contractor/Self-Employment Test**

The first prong—the issue of control—is based upon a showing of control, not only with regard to the work to be done, but also with regard to the manner of performing it. *Villager Realty of Bloomsburg v. Unemployment Compensation Board of Review*, 211 A.3d 900, 908 (Pa. Cmwlth. 2019) (*citing Osborne Associates, Inc. v. Unemployment Compensation Board of Review*, 3 A.3d 722, 728 (Pa. Cmwlth. 2010)) (internal quotation marks omitted). Factors typically considered by reviewing courts with respect to the first prong of the analysis, i.e., whether the claimant was free from direction and control, include:

> whether there was a fixed rate of remuneration; whether taxes were deducted from the claimant's pay; whether the presumed employer supplied equipment and/or training; whether the presumed employer set the time and location for the work; whether the presumed employer had the right to monitor the claimant's work and review his performance; and the requirements and demands of the presumed employer.

*Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 961 A.2d 261, 264 (Pa. Cmwlth. 2008). Additionally, the level of direct, day-to-day supervision may also be considered in determining whether a claimant is an independent contractor or self-employed. *See, e.g., Venango Newspapers v. Unemployment Compensation Board of Review,* 631 A.2d 1384, 1388 (Pa. Cmwlth. 1993) (considering direct daily

supervision as a factor in whether the claimant was an independent contractor). "No one factor will control the outcome, but the courts will look to the entire relationship to determine whether the requisite control exists to establish an employer-employee relationship." *Tracy v. Unemployment Compensation Board of Review*, 23 A.3d 612, 616 (Pa. Cmwlth. 2011).

Here, the record and findings clearly support the Board's conclusion that Open Pittsburgh does not control Claimant's day-to-day actions in the performance of her work collecting signatures. For example, Claimant was not required to work specific hours or days and was free to determine her own schedule, what days she would work, and where she would canvass within the City. Open Pittsburgh paid Claimant on a per-signature basis, rather than an hourly wage. Claimant was free to hire others, including her friends and children, to assist her in collecting signatures. Viewing all the factors as a whole, we conclude that these factors weigh in favor of finding an absence of control.

## B. **Open Pittsburgh: Second Prong of the Independent Contractor/Self-Employment Test**

Claimant contends that the Board erred in finding that she was customarily engaged in an independently established trade, occupation, profession or business of canvassing. We must agree.

Our Supreme Court recognized that "a worker can be considered an independent contractor **only if he or she is in business for himself or herself**." *Danielle Viktor, Ltd. v. Department of Labor & Industry, Bureau of Employer Tax Operations*, 892 A.2d 781, 798 (Pa. 2006) (emphasis added). Our Supreme Court in *Danielle Viktor, Ltd.* established a three-part test for determining whether a putative employee is engaged in "an independently established trade, occupation, profession or

13

business" under this second prong. Specifically, under *Danielle Viktor, Ltd.*, we look at the following factors: (1) whether the individuals are able to work for more than one entity; (2) whether the individuals depended on the existence of the presumed employer for ongoing work; and (3) whether the individuals were hired on a job-to-job basis and could refuse any assignment. 892 A.2d at 801-02. Moreover, as part of the second prong, we must analyze whether "the claimant [was] **customarily** engaged in such trade or business in order to be considered self-employed." *Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593, 598 (Pa. Cmwlth. 2012) (*en banc*) (emphasis in original).

Recently, in *A Special Touch v. Department of Labor and Industry*, __ A.3d __ (Pa., No. 30 MAP 2019, filed April 22, 2020, slip op. at *22-23), 2020 WL 1932622 at *10, our Supreme Court clarified that the meaning of the phrase "customarily engaged" requires an individual to be "usually," "habitually," or "regularly" "employed" or "involved" in activity; or "employed" or "involved" in activity "according to the customs," "general practice," or "usual order of things." The Supreme Court has instructed a putative employer must show that an individual is actually involved in an independent trade, occupation, profession, or business in order to establish that the individual is self-employed under the second prong of subsection (4)(*l*)(2)(B). *Id.* The Supreme Court further explained that: "circumstances demonstrating that an individual is actively holding himself out to perform services for another, such as through the use of business cards or other forms of advertising, even if not actually performing those services during a particular time period at issue" are relevant to the analysis. *Id.*

Here, the evidence establishes only that Claimant's work for Open Pittsburgh was on the side to make extra money and not that of an individual

customarily engaged in a trade, occupation, profession or business. There is no evidence that Claimant had established a private enterprise or independent business through which she provided services to Open Pittsburgh. The record lacks any evidence that Claimant advertised a canvassing "business" to Open Pittsburgh or to the public, or that she "solicited" business for herself. She did not offer her "canvassing services" to anyone but Open Pittsburgh. She worked on two projects for a very limited time. Significantly, the undisputed evidence demonstrated that prior to working for Open Pittsburgh, Claimant did not know *how* to canvass. She testified that she "started with Open Pittsburgh" and before Open Pittsburgh, she "did not have experience" as either canvasser or collector of signatures and that she "was not trained in anything professionally." (N.T. at 40.)

In *Minelli*, the claimant performed consulting services for DK Harris on an "as needed" basis but contended that her activities were insufficient to demonstrate that she was customarily engaged in an independently established trade, occupation or business. This Court agreed, concluding that the occasional offer of a limited amount of work over such a short period of time was simply not enough to demonstrate that the claimant was customarily engaged in an independently established trade, occupation, profession or business. *Minelli,* 39 A.3d at 598.

Similar to *Minelli*, Claimant's brief stint as a canvasser for Open Pittsburgh is not sufficient to establish that Claimant was customarily engaged in an independently established trade or business. Thus, we must reverse the Board's holding that the wages Claimant earned from Open Pittsburgh should not be included in calculating Claimant's financial eligibility for UC benefits.

15

## C. **Steel City Interpreters: First Prong of the Independent Contractor/Self-Employment Test**

Next, Claimant contends that the Board erred in concluding that she was not an employee of Steel City Interpreters. The Board found that Claimant was paid $40 per hour with a minimum of two hours of pay guaranteed, and that this factor weighed in favor of Claimant being an employee. The Board found, however, that the rest of the factors weigh in favor of Claimant being free from the direction and control of Steel City Interpreters. Specifically, the Board considered that Claimant had the right to refuse assignments, was issued a Form 1099 for her services and no taxes were withheld from her paychecks, was not provided on-the-job training, was not given tools or equipment to perform her services, and was not subject to monitoring by Steel City Interpreters.

Claimant contends that Steel City Interpreters exercised control over its interpreters because she was instructed to follow strictly Steel City Interpreters' guidelines regarding the manner of performing a job. Specifically, she asserts that she agreed that she "will represent Steel City Interpreters and conduct herself[] in a professional manner including appropriate dress and behavior." (Claimant's Br. at 18.) She further contends that she was instructed to use Steel City Interpreters' script for introduction. *Id.*

We have held that there is a "difference between control of a work product and control over the time, place and manner of performance." *J. Miller Co. v. Mixter*, 277 A.2d 867, 869 (Pa. Cmwlth. 1971). As this Court explained in *J. Miller Co.*, "control of the result only and not of the means of accomplishment" does not transform an independent contractor relationship into an employer-employee relationship. *Id.* "Every job, whether performed by an employee or by an independent contractor, has parameters and expectations." *Language Line Services, Inc. v. Department of General*

16

*Services*, 991 A.2d 383, 388 (Pa. Cmwlth. 2010). "Control . . . is not a matter of approving or directing the final work product so much as it is a matter of controlling the means of its accomplishment." *Id.*

In this case, Steel City Interpreters provided Claimant with a standard script to use when introducing herself. She was evaluated by Steel City Interpreters' clients and she was required to "conduct herself in a professional manner." While Steel City Interpreters exercised the minimum control necessary to ensure the quality of services provided to its clients, there is nothing in the record from which we can conclude that Steel City Interpreters controlled the work to be done or the means of Claimant's performance of her translation services. Steel City Interpreters merely offered assignments to Claimant, which Claimant was free to accept or reject. Based on these facts, we conclude, as the Board did, that Claimant was free from direction and control in the performance of her services for Steel City Interpreters.

**D. Steel City Interpreters: Second Prong of the Independent Contractor/Self-Employment Test**

As to the second prong, whether Claimant was customarily engaged in an independent trade of providing interpretation services, we conclude that Claimant was not a self-employed interpreter.

We are obligated by the Law to examine "such individual['s]" unique set of circumstances. 43 P.S. § 753(*l*)(2)(B). The proper approach is to focus the inquiry on the conduct of the individual claimant. Thus, the appropriate inquiry is whether the claimant, was, in fact, customarily engaged in a trade, occupation, profession or business that was independently established. *See A Special Touch. See also Glatfelter Barber Shop v. Unemployment Compensation Board of Review*, 957 A.2d 786 (Pa. Cmwlth. 2008).

17

Here, Claimant performed three interpretation assignments for Steel City Interpreters. There is no evidence indicating that Claimant intended to establish her own interpreters business or held herself out to the public as an interpreter for hire.

Thus, we reverse the Board's holding that the wages Claimant earned from Steel City Interpreters should not be included in calculating Claimant's financial eligibility for UC benefits.

## Conclusion

Based on the foregoing discussion, we conclude that both prongs required to demonstrate an independent contractor status of Claimant under section 4(*l*)(2)(B) of the Law were not met for either Open Pittsburgh or Steel City Interpreters. Accordingly, we reverse the Board's order.

 

 

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mirsada Begovic,                          :
                Petitioner       :
                       :  No.  682 C.D. 2019
        v.                               :
                       :
Unemployment Compensation        :
Board of Review,                          :
                Respondent     :

## *ORDER*

AND NOW, this 23rd day of June, 2020, the order of the Unemployment Compensation Board of Review is hereby reversed.

_____
PATRICIA A. McCULLOUGH, Judge